## SEABOARD AIR-LINE RAILWAY *v.* KNICKERBOCKER TRUST COMPANY.

1. An intervenor takes the case as he finds it, and where the relief prayed grows out of a decree rendered before the filing of the intervention, he can not be heard to attack the decree on any ground which might properly have been the subject-matter of a plea by the defendant. He can not with one hand reap the fruits of the decree and with the other strike down the decree itself.

2. The general rule is that a mortgage takes precedence over debts due general creditors, whether created before or subsequently to the mortgage.

3. There was no equity in the intervention.

Submitted March 3,—Decided May 16, 1906.

Intervention. Before Judge Parker. Glynn superior court. March 24, 1905.

The Knickerbocker Trust Company, as trustee for the first-mortgage bondholders, filed in the superior court of Glynn county a petition for the foreclosure of the mortgage securing the bonds issued by the Brunswick and Birmingham Railroad Company, and for the appointment of a receiver. The defendant admitted default in the payment of interest coupons, and insolvency; and the prayers of the petition were granted. In the final decree it is declared that the mortgage set forth in the petition is a valid and subsisting mortgage, and constitutes a first lien upon all the property and franchises of the defendant railroad company. The amount of the bonds was over three million dollars. The property of the defend-

ant was sold at public outcry, and was bought in by Bird M. Robinson for one million dollars; and this sale was confirmed. The purchaser was required to furnish a bond in the sum of $35,000, conditioned for the payment of such costs and claims as might be adjudged to be properly payable out of the proceeds of the sale. The bond was filed, and thereafter the plaintiff moved to cancel the bond, as all claims and demands entitled to preference over the bonds had been satisfied. The Seaboard Air-Line Railway then filed a petition, praying to be allowed to intervene, and setting up that there were pending three suits in which the Seaboard Air-Line Railway and the Brunswick and Birmingham Railroad Company were defendants, the suits being for damages for personal injuries. In one case a judgment for $2,750 had been rendered against the defendants, and was now pending on writ of error in the Supreme Court. In the event judgments in said suits are finally rendered against the defendants, the Seaboard Air-Line Railway would be entitled to demand contribution from the said Brunswick and Birmingham Railroad Company. Therefore it was prayed that the $35,000 bond be continued in force. By amendment it was further alleged, that the bonds issued by the Brunswick and Birmingham Railroad Company were delivered to the holders without any consideration, and were in reality gifts to the promoters of the mortgagor, and that the amounts paid out upon such bonds already exceeded the sums paid thereon, and said bondholders were in equity entitled to no more of the proceeds from the sale of the property of the defendant. This intervention was not allowed; and the Seaboard Air-Line Railway excepted.

*Crovatt & Whitfield,* for plaintiff in error.

*Ellis, Wimbish & Ellis, Kay, Bennet & Conyers,* and *F. E. Twitty,* contra.

COBB, P. J. (After stating the foregoing facts.) The relief sought by the Seaboard Air-Line Railway, in its petition to intervene, was to continue of force the $35,000 bond, and charge this bond with any amount in which the Brunswick and Birmingham Railroad Company might be liable for contribution to the petitioner, by reason of a judgment that had been obtained and on judgments that might be thereafter obtained in suits pending against the Brunswick and Birmingham Railroad Company and petitioner. The bond for $35,000 existed by reason of the final

decree rendered in the foreclosure proceedings brought by the Knickerbocker Trust Company against the Brunswick and Birmingham Railroad Company, this decree declaring the bonds a valid first lien upon the property of the defendant, approving the sale of defendant's property for one million dollars, and requiring the purchaser thereof to give the bond conditioned for the payment of such costs and claims as might be adjudged to be properly payable out of the proceeds of the sale. It was further directed that all creditors with claims entitled to a preference over the bonds should file their claims on or before November 1, 1904; in default of which they should be barred from participation in the proceeds of the sale or from recourse upon the bond. The Seaboard Air-Line Railway, after November 1, 1904, filed the petition here under consideration. An intervenor takes the suit as he finds it. *Charleston Ry. Co.* v. *Pope,* 122 *Ga.* 579. The office of an intervention is to cause a party to be made to a pending proceeding, not to establish that the proceeding should not exist. An intervenor can not with one hand reap the fruits of judicial adjudication, and with the other strike down the proceedings in which the adjudications have been rendered. Therefore the petitioner in this case can not be heard to charge the bond with its claims against the defendant, and at the same time attack the decree under which the bond obtained its life. Even if the bonds issued by the defendant were fraudulently issued, the decree of foreclosure is not to be attacked by way of intervention. This would be matter for a petition in the nature of an original bill. In addition to this it would seem that the intervenor is concluded by the decree as to any matter which would have been the proper subject of a plea by the Brunswick & Birmingham Railroad Company. See Stout v. Lye, 103 U. S. 66. Even if the petitioner can properly make the matter alleged the subject of intervention at all, the only question made in the intervention which can be properly determined is whether the contingent liability of the defendant for contribution to petitioner, on the judgment obtained and others that may be obtained against them jointly, is a claim having priority over the mortgage lien upon the corpus of the defendant's property.

The bond represented the corpus of the property. Any sums paid to satisfy claims, the payment of which the bond was intended to protect, were in the nature of payments on the purchase-

money of the property of the railroad which was sold at the foreclosure sale. The bond did not represent income derived from the operation of the road either before or after the appointment of a receiver. Hence the case of *Green* v. *Coast Line R., Co.*, 97 *Ga.* 15, has no application to the present case. While the reasoning in the opinion in that case might be extended to cover a case involving a distribution of the proceeds of the sale of the corpus of a railroad, we are not now prepared to extend the ruling of that case farther than the case itself goes; which limits the right of one holding a claim against a railroad for damages arising out of a tort to seeking compensation out of the income derived from the operation of the road. The general rule is that a mortgage takes precedence over debts due a general creditor, whether created before or subsequently to the mortgage. 5 Thomp. Corp. § 6260. The dates of the causes of action in the three suits against the Brunswick and Birmingham Railroad Company do not appear in the record; but from the averments in the petition for intervention, and of the petition for foreclosure, it can be inferred that in each instance the cause of action originated after the execution of the mortgage. But it is immaterial whether the cause of action arose antecedently or subsequently to the mortgage. The intervenor has no lien for the ultimate liability that might be imposed upon it by a recovery against it jointly with the Brunswick and Birmingham Railroad Company. It does not appear by any distinct averment from the record whether the cause of action originated before the property of the railroad company was placed in the hands of a receiver, or whether it originated after the receiver took charge. As the allegation is that the causes of action were against the Brunswick and Birmingham Railroad Company, and that the suits pending are against it and the intervenor, it is necessarily to be inferred that the causes of action originated before the foreclosure proceedings were instituted. For if they had originated afterwards, the suit would not have been against the Brunswick and Birmingham Railroad Company and the intervenor, but against the receiver of the Brunswick and Birmingham Railroad Company and the intervenor. The judgment obtained in one of the cases, and any judgment that might be obtained in the other cases, would be simply liens from the dates of the judgments, and under the law these liens would be inferior to the lien of the mortgage. It is not

contended that as legal liens they would take priority over the mortgage, but it is said that in equity they should have such priority. We know of no equity principle which would subordinate the lien of the mortgage to these after-acquired liens. Even if the intervenor is to be given the status of a general creditor of the Brunswick and Birmingham Railroad Company (and it is by no means certain that it is entitled to such a position), the claim which it has or might hereafter have against the Brunswick and Birmingham Railroad Company has no priority in law or in equity over the lien of the mortgage given to secure the payment of the bonds issued by the railroad company. See, in this connection, St. Louis Trust Co. *v.* Riley, 70 Fed. 32 (30 L. R. A. 456) ; Hiles *v.* Case, 14 Fed. 141.

<div align="center">

*Judgment affirmed. All the Justices concur.*