PERKINS *et al. v.* TALMADGE & COMPANY *et al.*

The intervention of plaintiffs in error did not set forth a cause of action, and the general demurrers were properly sustained.

No. 159. JANUARY 16, 1918.

Equitable petition; intervention. Before Judge Sheppard. Evans superior court. November 17, 1916.

On March 21, 1912, Henry Talmadge & Company, a copartnership, filed in the superior court of Tattnall county a petition against the Perkins Lumber Company, a corporation, and its creditors, asking for the appointment of receivers; for decree that certain mortgages described in the petition were liens on the Register and Glennville Railroad, owned by the Perkins Lumber Company; for special liens against said railroad; and for general judgment. The mortgages referred to were executed by the Perkins Lumber Company, one dated June 6, 1908, and securing the principal sum of $125,000, and one dated November 11, 1910, and securing the additional sum of $10,000. William W. Mackall intervened and set up a mortgage by the Perkins Lumber Company, covering the same property, dated February 1, 1916, to J. F. Hanson, trustee, to secure certain bonds in the principal sum of $6,900, held by the intervenor, and prayed for judgment of foreclosure, etc. The Savannah Trust Company intervened and set up two mortgages executed to it by the Perkins Lumber Company, one dated March 1, 1911, to secure the principal sum of $63,000, and one dated January 31, 1912, for $2,000, both covering the same property.

The case came on to be tried; and on April 11, 1913, a verdict and judgment were rendered in favor of William W. Mackall for $6,900 principal, $1,145.73 interest; Savannah Trust Company, $2,000 principal, $186.30 interest; Savannah Trust Company $63,000 principal, $10,375.45 interest; and Henry Talmadge & Company, $135,666.66 principal, $15,056 interest. By the decree entered upon the verdict debts of the Perkins Lumber Company

amounting to more than $234,000 were declared to be valid liens on the railroad property in the hands of the receivers, superior to any other claims whatsoever; and the rank of said liens among themselves was also fixed by the decree. Subsequently the railroad property of the Perkins Lumber Company (all other assets of the corporation having been administered in a bankruptcy proceeding instituted after the filing of the petition by Henry Talmadge & Company) was sold by the receivers under order of the court for $225,000, and the sale was confirmed. In the order of sale it was provided that the purchasers, if lienholders, might pay their bid by surrendering debts to the amount decreed to be due them; and the lienholders bought the property and assigned it to the East Georgia Railway Company, one of the defendants in error. The decree further provided that the purchasers should take the property free and clear of all claims thereon, except the obligations of the receivership. In the order delivering the possession of the property to the purchasers, or their assignee, the court reserved the right to call upon the purchasers for any sum which might be decreed to be due from the receivers, or liens created by them in the course of the receivership, or other claims which might be a liability of the receivers. There being no further assets in the hands of the receivers, they applied to the court for an order requiring all persons having claims against them to prove and file them with one of the receivers as chairman by a certain date, or else be thereafter barred to claim anything against the receivers or the property sold by them. W. V. Davis was named as manager of the receivers, and May 1, 1916, was fixed as the limit of time in which such claims should be filed.

On May 5, 1916, Gertrude C. Perkins, Sarah E. Perkins, and Willie Lee Schroder, née Perkins, filed in the superior court of Tattnall county an intervention disclosing in substance the foregoing, and making the following claims: (1) That George W. Perkins died September 14, 1903, leaving by will to intervenors fifty shares each of the stock of the Perkins Lumber Company, of the value, at the time of his death, of $150 per share. (2) That by the will of George W. Perkins Henry C. Perkins was appointed guardian for intervenors, with power to sell at public or private sale any of the property bequeathed to them; that said guardian accepted the trust, but never withdrew the stock owned by the

intervenors from the Perkins Lumber Company; that later Henry C. Perkins, as president of the Perkins Lumber Company, gave a mortgage to J. F. Hanson, trustee, on the Register and Glennville Railroad property, Henry C. Perkins and Perkins Lumber Company at the time holding the shares of stock belonging to intervenors in trust for intervenors. (3) That Henry C. Perkins died on December 17, 1906, but before his death he had sold, as guardian, the stock of intervenors to W. C. Perkins for $100 per share; that W. C. Perkins never paid anything except a portion of the interest on the purchase-money, and title to the stock never legally passed out of intervenors. (4) That on March 1, 1907, Henry W. Perkins was appointed and qualified as guardian for intervenors, and gave bond in the sum of $120,000 as such guardian, with the Perkins Lumber Company as a surety. (5) That, prior to the death of Henry C. Perkins, Henry C. and W. C. Perkins pretended to acquire and become owners of all the stock of the Perkins Lumber Company; but intervenors contend that the guardian could not sell, except for cash, the stock owned by them respectively, and that W. C. Perkins obtained no title to the stock belonging to intervenors. (6) That Henry W. Perkins, as guardian for intervenors, has never recovered the shares of stock or the value thereof, or any of the proceeds arising therefrom, and that intervenors have never received any part of the value of the said shares of stock. (7) That, following the death of Henry C., W. C. Perkins was elected president of the Perkins Lumber Company, and as such, on June 6, 1908, he executed a mortgage to Henry Talmadge & Company, and a supplemental mortgage on November 11, 1910, on the property known as the Register and Glennville property, sold by the receivers in this case; and as such president he executed other mortgages on said property under dates of January 31, 1912, and March 1, 1911. (8) That the property covered by all of said mortgages included the interest of intervenors in said property as represented by their shares of stock in the Perkins Lumber Company, and these mortgages were executed without authority of law "so far as affects the interest of intervenors in said property;" that W. C. Perkins, as trustee and guardian, had no right to create a lien on the interest of intervenors in the corporate assets of the Perkins Lumber Company, as represented by their shares of stock. (9) That all of said mortgagees had

notice, "actual or constructive," that the mortgages embraced the interest of intervenors in the property covered thereby, the interest of intervenors being represented by their respective shares of stock in the Perkins Lumber Company, and that no lien could be created thereon by the Perkins Lumber Company or its officers. (10) That on June 15, 1915, intervenors filed in Evans superior court a suit against Henry W. Perkins as guardian, American Bonding Company as surety on guardian's bond, and W. C. Perkins and Perkins Lumber Company as sureties on another guardian's bond, for failure to take advantage of and recover the assets left intervenors by the will of George W. Perkins, and for failure to recover from the Perkins Lumber Company and from the estate of Henry C. Perkins, deceased, the value of said shares of the stock of the Perkins Lumber Company bequeathed to intervenors; and that on October 28, 1915, intervenors each obtained a verdict and judgment against the guardian, Henry W. Perkins, and certain sureties, including the Perkins Lumber Company, for $15,550 principal, besides interest. (11) That inasmuch as the stock of the Perkins Lumber Company at the time of the death of George W. Perkins was worth $150 per share, intervenors should recover "at least the alleged contract price of sale of the said shares," with interest added. (12) That the capital stock of the Perkins Lumber Company was divided into 1000 shares, and intervenors claimed 150/1000 of the price bid for the property at receivers' sale. (13) That they elect to follow the proceeds of the sale, instead of following the property. They pray, that they be paid from the proceeds of sale by the receivers the respective amounts they claim as their interest in the property; and that the decree of April 11, 1913, be so amended as to decree their claims to be liens upon the proceeds of the sale by the receivers, "superior to the claims of any other creditor of the Perkins Lumber Company." Intervenors did not attach to their intervention a copy of the will of George W. Perkins; nor a copy of the contract of sale of the stock bequeathed to intervenors by the will of George W. Perkins, alleged to have been made by Henry W. Perkins, guardian, to W. C. Perkins; nor a copy of the suit filed by intervenors in Evans superior court against Henry W. Perkins, guardian, et al.

To this intervention defendants in error interposed their several and joint demurrers, general and special. The court sus-

tained the general demurrers, and the intervenors, as plaintiffs in error, insist that this was error, because (a) the defendants in error were not entitled to be heard, and were without interest in the subject-matter of the litigation, for that they had not filed their claims with the chairman of the receivers by May 1, 1916, as required by the order of the court; (b) the intervention set forth a good cause of action.

*W. G. Warnell* and *Way & Burkhalter,* for plaintiffs in error.

*W. B. Stephens* and *Travis & Travis,* contra.

GEORGE, J. (After stating the foregoing facts.) The first contention made by the plaintiffs in error is that defendants in error were not entitled to be heard in opposition to the intervention filed by them, and had no interest in the subject-matter of the litigation and funds arising from the sale of the property of the Perkins Lumber Company by the receivers, because they had failed to file their claims with the chairman of the receivers by May 1, 1915, as required by order of the court. This contention must be dismissed with the observation that the order of court requiring all parties to present their claims to the receivers by a day fixed was passed upon the application of the receivers appointed in the very proceeding in which the defendants in error were allowed a decree setting up and declaring the rank of their respective liens. The ex parte order of the court, if it referred to defendants in error at all, certainly did not have the effect to set aside the judgment and decree of the court in favor of the defendants in error, which decree was the foundation of all future proceedings in the case, including the application of the receivers themselves to have all claims against the Perkins Lumber Company, and the properties of the company sold by them, presented to them by a date certain.

Did the intervention set forth a cause of action? Plaintiffs in error came into court on May 5, 1916, under the familiar rule in equity that an intervenor takes the case as he finds it. On that date they found a decree of the court establishing and declaring liens in favor of the defendants in error. This decree was rendered more than three years prior to the filing of the intervention, and, both under § 4358 of the Civil Code and the rule in equity referred to, the intervenors are not entitled to have the decree annulled. They expressly declared that they elected to follow the proceeds of the sale of the property made by the receivers. The

relief prayed by them grows out of the decree rendered before the filing of the intervention, and they can not be heard to attack the decree on any ground which might properly have been the subject-matter of a plea by the Perkins Lumber Company. They can not with one hand reap the fruits of the decree and with the other strike down the decree itself. *Seaboard Air-Line Railway* v. *Knickerbocker Trust Co., 125 Ga. 463 (54 S. E. 138) ; Charleston &c. Railway Co.* v. *Pope, 122 Ga. 579 (50 S. E. 374).*

The decree in the original suit of Henry Talmadge & Company against the Perkins Lumber Company and its creditors established the validity of the mortgages respectively held by the defendants in error. These mortgages were more than sufficient in the aggregate to consume the entire purchase-price received for the properties of the Perkins Lumber Company. Intervenors, therefore, could have no standing as judgment creditors; and as stockholders (and such they really were, under their allegations) their claims could not be paid out of the assets of the defunct lumber company ahead of common creditors,—to say nothing of judgment-lien creditors and mortgage creditors. To this latter class the defendants in error belonged. It is an elementary principle that the capital stock of a corporation is first for creditors, then for stockholders. Even the general creditors of the corporation (and certainly there is no claim made in the intervention that defendants in error are not general creditors) are entitled to be paid before the stockholders can claim any portion of the assets of an insolvent corporation. *Schley* v. *Dixon, 24 Ga. 273 (71 Am. D. 121) ; Beck* v. *Henderson, 76 Ga. 360 (4).* It follows from the foregoing that the judgment sustaining the general demurrers to the intervention was right, and it is therefore

*Affirmed. All the Justices concur, except Fish, C. J., absent.*