## BANK OF CHATSWORTH *v.* HAGEDORN CONSTRUCTION COMPANY; *el vice versa.*

1. Under the act of 1919 (Ga. L. 1919, p. 706), the board of supervisors of roads and revenues of Murray County designated the Bank of Chatsworth a special depository for the proceeds of the sale of certain road and bridge bonds authorized by a special election held for that purpose, and the bank received and paid out all the road-bond funds deposited with it on warrants issued by the secretary of the board of supervisors, except $89.35. A warrant issued by the clerk of the board in favor of the plaintiff for $17,750 for road work was refused payment by the bank, for want of funds; and a petition for mandamus was brought by the plaintiff against the bank to compel the payment of the check. The defendant answered that it had paid out all funds in its hands known as the road-bond fund on checks of the clerk, except $89.35, and it was therefore unable to pay the warrant. The case was referred to an auditor, who made a finding of law against making the mandamus absolute. On exception the trial judge reversed the auditor's finding, and made the mandamus absolute. A motion for new trial was overruled, and the bank excepted. *Held,* the entire record considered, that the rulings of the trial judge do not require a new trial.

2. Where such a bank has been designated as a county depository and has accepted such designation by receiving the funds of the county for certain specified purposes, thus becoming a quasi-public officer of the county in handling the money of the county so deposited; and where such bank, which has given bond to indemnify the county against loss,

Depositaries, 18 C. J. p. 579, n. 17; p. 593, n. 9.
Mandamus, 38 C. J. p. 821, n. 64, 65, 66.

has paid out of such deposit various sums not authorized by law, such bank is liable to account for such funds, not only for such part of the fund as it has in its possession, but also for any portion thereof of which it may have made an illegal disposition.

3. Under the act of 1919, supra, "the said bank selected as a depository shall keep the accounts of the county, receive and pay out the moneys of the county on proper vouchers approved by the board of supervisors of roads and revenues of said county, without charge or expense to the county," etc. The warrants, in order to be legal, must not only be "proper" and "approved" by the board of supervisors, but must be issued only for the purposes for which the money could be legally used. Interest on the road bonds, counsel fees, and unauthorized clerical services by the secretary of the board of supervisors, exceeding $3 a day therefor, were not purposes for which the road-bond money could be legally used.

4. The court did not err in refusing a new trial.

Nos. 5050, 5059.   July 13, 1926.

Mandamus. Before Judge Tarver. Murray superior court. July 25, 1925.

Hagedorn Construction Company, a corporation under the laws of the State of Alabama, filed its petition for mandamus on May 3, 1922, against the Bank of Chatsworth, and alleged in substance the following: Sometime prior to December 3, 1919, Murray County issued and sold bonds aggregating $100,000, the proceeds of which were to be used for the purpose of building the public roads and bridges of the county. Upon the sale of the bonds the Bank of Chatsworth, having bid to become the county depository of said road-bond fund, and the bid having been accepted and a bond tendered, received the money from Murray County. By the act of the bank and the officials of Murray County the bank became the duly constituted depository of said fund. The office of treasurer of Murray County had been abolished by legislative act, with power in the proper officers of the county to select a bank as depository to keep the accounts of the county, receive and pay out its moneys on proper vouchers, etc. On November 24, 1920, petitioner entered into a contract with Murray County for the construction and improvement of a highway known as Project 178, on the basis of a contract price approximating $66,964.27, of which the Georgia State Highway Department contracted to secure 50 per cent. through Federal aid. At the time of or prior to entering into this contract Murray County by resolution set apart a sufficient part of the road-bond fund to pay the county's proportion of the work. Petitioner has fully performed its part of the

contract, and the highway has been accepted by the State Highway Department. There is still due petitioner on the contract price approximately $23,000, all of which is unpaid. Murray County has given petitioner an order on the Georgia State Highway Department for approximately $5,000, and there is still due by Murray County to petitioner approximately $18,000. The board of commissioners of roads and revenues of Murray County passed a resolution authorizing the issuance of a warrant to petitioner for the sum of $17,725, and that the warrant be drawn on the road-bond fund at the Bank of Chatsworth. In accordance with such resolution such warrant was drawn, and was presented to the bank for payment, which payment was refused on the alleged ground of insufficient funds. It is alleged that the bank received from Murray County sufficient funds that were appropriated for the payment of the county's proportion of the contract price of Project 178 to have paid this warrant, that the amount of the warrant has not been paid out by the bank on this project, and that the bank should have had and in law is chargeable with having sufficient funds to pay the warrant. By amendment it is alleged that the bank came into possession of further funds belonging to the road funds, received from the Highway Department of the State, the sum of $29,000; that the bank knew and was chargeable with knowledge and notice that all of said funds were to be devoted to improving the roads and bridges of Murray County, and could not lawfully be used for any other purpose; that it was the duty of the bank to pay out the funds only for roads, bridges, and the repairing and improving thereof, and to pay no warrants that were not drawn for such purposes; that the bank was chargeable with knowledge and did know that Murray County had entered into a contract with the Hagedorn Construction Co. to construct the highway known as Project 178 for the approximate sum of $67,000, of which one half was to be paid by the Federal Government through the State Highway Department and one half to be paid by Murray County out of its road money in the custody of the bank. To this petition as amended the defendant bank filed its demurrers, which were overruled, and the case was taken to the Supreme Court. This court held that the petition as amended set out a cause of action, and was not subject to the demurrers

filed. *Bank of Chatsworth* v. *Hagedorn Construction Co.*, 156 *Ga.* 348 (119 S. E. 28).

In addition to the demurrers the defendant filed an answer admitting that it was conducting a banking business at Chatsworth; that bonds for road purposes were issued in the sum of $100,000; that it made a bid for the proceeds of the bonds and the bid was accepted and bond was given to Murray County as alleged. It denied that it was the county depository in connection with the fund, and chargeable with the duties of treasurer and especially chargeable with the duty of safely keeping the road fund as well as keeping the accounts of the county applying to the road funds, and of receiving and paying out moneys in connection with said fund on proper vouchers approved by the proper authorities of the county. It neither admitted nor denied the execution of the contract between plaintiff and Murray County, and that a sufficient part of the road fund had been set apart to pay for the county's part of the work, or that the work had been fully performed, or that there was still due plaintiff the amount alleged, or that a resolution had been passed by the county board authorizing the issuance of a warrant to pay the balance due plaintiff. The bank admitted that it refused payment of the warrant. It averred that it was not a county depository; that the money derived from the sale of the bonds was received unofficially, and as a bank deposit subject to check; that it has complied with its obligations in every respect; that it paid out the money upon checks as any other bank, furnished monthly statements, and that the last statement made by it showed that the road-bond fund contained a balance of $89.35. In connection with the answer the defendant attached a statement purporting to show the account between Murray County and the Bank of Chatsworth, showing a total of $136,000 deposited to the credit of the county, and that all of it was drawn out except the sum of $89.35. The plaintiff filed a motion to strike certain parts of the answer, which motion was partially sustained. The court struck all reference to the Cohutta Banking Company as county depository, and the averment that the Bank of Chatsworth was not chargeable as a county depository; and held that the statement of payments by the defendant was insufficient. The defendant filed an amendment to its answer, in which it set out money actually paid out by it on county warrants

and the purposes for which the money was paid. It also set out the financial status of the bank on November 15, 1922, and certain negotiations and arrangements by which the assets were turned over to and its liabilities assumed by the Georgia State Bank, setting up that it had no funds to pay any judgment of the county if mandamus absolute should be granted against it. Plaintiff filed its motion to strike certain parts of this amendment; and certain of the objections were overruled and others sustained, the effect of the order being to strike from the answer the averments that related to defendant's financial condition, and what was done by it in connection with the Georgia State Bank in taking over its affairs, the averment with reference to its inability to have paid the warrant when presented, and that the Georgia State Bank could not be reached by mandamus. The defendant further amended its answer and set up that to require it to pay any sum in excess of $89.35 would be in violation of par. 1 of sec. 3 of art. 1 of the constitution of the State of Georgia, which provides: "Private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid;" and in violation of the 5th amendment to the constitution of the United States to the same effect, and further in violation of par. 21 of sec. 1 of art. 1 of the constitution of Georgia, which provides that "there shall be no imprisonment for debt." Plaintiff moved to strike said paragraph, which motion was sustained. The defendant filed exceptions pendente lite to each ruling of the court on the pleadings.

The case was then referred to G. E. Maddox as auditor. The auditor filed his report giving his findings of law and of fact. Defendant and plaintiff each filed exceptions of fact and law to the report of the auditor, and the defendant filed objections to the plaintiff's original exceptions. These objections raised the question as to whether or not equity or common-law rules would apply in the form of the exceptions. These objections were overruled. The court sustained and overruled certain of the exceptions of law to the auditor's report filed by both parties, and, the case being submitted to be decided without a jury, found for and against certain exceptions of fact of each of the parties, and held that the plaintiff was entitled to a mandamus absolute. The defendant excepted pendente lite to the rulings and judgment of the court, and

also made a motion for new trial, which was overruled. The plaintiff also filed exceptions pendente lite to the findings of law and fact of the court, as set out in the cross-bill of exceptions.

*Smith, Hammond & Smith, W. C. Martin,* and *Jesse M. Sellers,* for plaintiff in error in main bill of exceptions.

*Dorsey, Howell & Heyman, Mark Bolding,* and *C. N. King,* contra.

HILL, J. (After stating the foregoing facts.) This case was here on a former occasion. *Bank of Chatsworth* v. *Hagedorn Construction Co.,* supra. It was here on petition and demurrer; and a majority of this court held that the petition set out a cause of action for mandamus in order to compel the Bank of Chatsworth to pay a certain warrant for $17,750, drawn on the bank by the board of supervisors of roads and revenues of Murray County. It was there held that the bank "became a quasi-public officer of the county in the handling of the moneys of the county, or at least a corporation owing duties to the public." It was also held that "When it is sought to enforce payment of a county warrant for a claim which has been audited and allowed, a mandamus absolute will be refused, if it appears that there are no funds available to pay the same; but the lack of funds with which to pay such warrant, not appearing from the allegations of the petition for mandamus, is a matter of defense, and the presence of such funds need not be alleged in the petition. Quære, whether mandamus will lie against the depository bank, if it should appear that it had misapplied all of the funds of the county on which the warrant was drawn, and for this reason was without funds to pay the same." The record in this case is very voluminous, and a great many questions are raised in the record by demurrers to the answer, exceptions to the sustaining of certain exceptions of fact and law by the trial judge in the court below, and otherwise. The writer has taken much time and given much consideration to the many questions involved; and though the questions are stated in different ways, they all revolve around a few controlling questions. When the case went back to the trial court for a hearing on its merits, the defendant filed its answer in which it averred, among other things, that it had paid out all of the money in its hands which had been deposited with it for a specific purpose, except a very small amount ($89.35), which was insufficient to meet the de-

mands of the warrant ($17,750) which had been issued to the plaintiff, and which, so far as the record shows, was regular upon its face. The auditor to whom the case was referred, and who heard evidence, found as a matter of law that mandamus would not lie in a· case like the present. The trial judge sustained the exception of law on this point to the ruling of the auditor, and granted a mandamus absolute. There were other rulings by the trial court favorable to the defendant, and a cross-bill of exceptions was filed by the plaintiff to certain of these rulings, which need not be referred to, in the view we take of this case. (1) If the defendant paid certain of the warrants for purposes other than for road and bridge purposes out of the road-bond fund, could the defendant plead such actual payments as a defense by showing that by reason of such payments the road-bond fund had been exhausted so as to prevent the issuance of a mandamus absolute? (2) Will a mandamus absolute issue, commanding the defendant bank to do what is not within its power by voluntarily putting it out of its power to perform a duty imposed upon it by law, even though it may become liable in damages for so doing?

The office of county treasurer of Murray County was abolished by the act of the legislature of 1915 (Ga. L. 1915, p. 319). By the act of 1916 (Ga. L. 1916, p. 479), the ordinary of Murray County performed the duties of treasurer. The legislature in 1919 (Ga. L. 1919, p. 706) passed an act providing that the money belonging to the County of Murray should be placed under the control of the board of supervisors of roads and revenues, and requiring that the board should select a county depository for such funds. Under this act it was provided that the county funds should be deposited in some solvent bank that would pay the highest rate of interest on daily balances, and required such bank which might be selected as the depository to give a good and sufficient bond to indemnify the county against loss; and also required the bank to keep the accounts of the county, receive and · pay out the money of the county on proper vouchers approved by the board of supervisors of roads and revenues, without any charge or expense to the county. The Bank of Chatsworth was selected by the board of supervisors for the purposes above named. This court, in *Bank of Chatsworth* v. *Hagedorn Construction Co.,* supra, with reference to the contention that the Cohutta Banking

Co. was the duly constituted county depository, said: "Conceding that we should indulge this general presumption, then we must likewise indulge the special presumption that the supervisors had either selected the Bank of Chatsworth as the depository of all county funds, or had selected it as the depository of these county road moneys. As to these road funds, we indulge the presumption that the Bank of Chatsworth received them under an implied contract to handle them as the depository of the county pro tanto at least; and the terms of the local act providing for the selection of such depository form a part and parcel of the implied contract, as they do of the express contract set out in exhibit A. To indulge a contrary presumption would impute to the supervisors a violation of duty, and to the bank a participation therein." We are of the opinion, under the facts in the record, that the Bank of Chatsworth became the county depository under the act of 1919, supra, which required that such depository "shall keep the accounts of the county, receive and pay out the moneys of the county on proper vouchers approved by the board of supervisors of roads and revenues of said county." 156 *Ga.* 358, supra. The record shows that the Bank of Chatsworth received the sum of approximately $11,648.68 more than it has shown by vouchers that it has paid out on legal warrants drawn on the road-bond-fund, except a small stated amount which it claims to have on hand. We are of the opinion, therefore, regardless of whether a bank could be required by mandamus to pay out money when it is shown that it has not such an amount within its power, custody, or control, that to the above extent the trial judge was authorized to issue a mandamus absolute against the bank for whatever amount it is shown that the bank has received, and which it has failed to show by proper vouchers that it has paid out for proper road and bridge purposes.

Will mandamus lie against the depository bank if it should appear that it was without sufficient funds to pay the warrant drawn against it? The courts in outside jurisdictions seem to be about equally divided on the question as to the effect of a lack of funds with which to pay the warrant sought, upon the right of the holder of a claim to compel by mandamus the payment of the warrant. One group of courts takes the position that without funds, out of which he can demand payment, the warrant would be useless to

the relator, and therefore that he is not entitled to the writ. Other courts take the opposite view, and hold that the lack of funds is immaterial. L. R. A. 1916D, 334, note; and see, to the same effect, 18 R. C. L. 227, § 151, and cit. But whatever the rule may be in outside jurisdictions, this court has decided, in *Aaron* v. *German*, 114 *Ga.* 587 (40 S. E. 713), as follows: "One who has failed to comply with a duty imposed upon him by law, of paying over to another a particular fund to the custody of which the latter is entitled, is liable to account to him, not only for such part of the fund as the former has retained in his hands, but also for any portion thereof of which he may have made an illegal disposition." In delivering the opinion of the court in the *Aaron* case, Judge Lumpkin said, among other things: "The mandamus absolute, if granted at all, should have covered the whole amount for which German was accountable, and not merely the balance which he retained in his hands after making an unauthorized disposition of the greater portion of the fund he had collected." And in the case of *Hutcheson* v. *Manson*, 131 *Ga.* 264, 267 (62 S. E. 189), it was said: "So the simple question made by the answer of the ordinary was, whether mandamus would lie to compel him to pay the orders of the petitioner for insolvent costs, when the funds from which these orders should have been paid had been all disbursed by the defendant in violation of the law, and hence were not in his possession or within his control. In some jurisdictions inability upon the part of a public officer to pay or turn over funds which have come into his hands, to the person to whom it is his official duty to pay or deliver them, has been held sufficient to prevent his being required by mandamus to do so, even though his inability has been caused by his having paid out or disbursed such funds in violation of his duty under the law. In other jurisdictions a contrary rule has been enforced. The question in this State, however, can not now be considered an open one. . . Under that decision [*Aaron* v. *German*, supra], it is clear that the fact that the ordinary did not have in his possession or control the funds which he had collected from the hire of the misdemeanor convicts, from which to pay petitioner's orders for insolvent costs, as solicitor of the city court, was no reason for denying a mandamus absolute, when it appeared that the ordinary had himself disbursed such fund in violation of the law. Consequently the case

falls squarely under the ruling made in *Aaron* v. *German*, and the judgment overruling the demurrer to the defendant's answer must be reversed." The record in the instant case shows that a warrant, regular upon its face, and signed by the secretary of the board of supervisors of roads and revenues of Murray County, was presented to the Bank of Chatsworth for payment in the sum of $17,750, which the bank declined to pay, on the ground that it had paid out all of the funds in its hands on warrants drawn by the clerk of the board of supervisors for various purposes, which it is contended were not authorized by law to be drawn against this road fund; and the contention of the bank is that after paying out these various amounts there is in its hands the sum of only $89.35, which is insufficient to pay the warrant presented to it. The record shows that no vouchers at all were introduced to show that the bank had paid out, as it alleges, the sum of $11,648.68.

Another question to be determined is, whether the defendant bank is chargeable in law with paying out the road-bond fund only on proper warrants duly approved by the board of supervisors of roads and revenues of the county for road and bridge purposes. The trial judge decided in effect this question in the affirmative, and we are of the opinion that he correctly so decided. The act of 1919 (Ga. L. 1919, p. 706, sec. 3) provides that "the said bank selected as a depository shall keep the accounts of the county, receive and pay out the moneys of the county on proper vouchers approved by the board of supervisors of roads and revenues of said county, without charge or expense to the county," etc. It is clear from the above wording of the act that the bank must pay out the money of the county on "proper vouchers." The use of the words "proper vouchers" implies that the vouchers must be issued under some apparent authority, and also that they must be approved by the board of supervisors. It is manifest that the warrants, in order to be legal, must not only be "proper" and "approved" by the board of supervisors, but must be issued only for the purposes for which the money could be legally used. It appears from the record in this case that the road bonds were advertised, that the election was held which resulted in favor of the bonds, that the bonds were issued and sold, and the proceeds thereof, the sum of $100,000, were to be used only for the purposes for which they

32

were authorized to be issued. In the Civil Code (1910), § 440, with reference to the notice to be given of an election on an issue of bonds, it is provided that "in said notice he shall specify what amount of bonds are to be issued, for what purpose, what interest they are to bear, how much principal and interest to be paid annually, and when to be fully paid off." It appears that the County of Murray issued and sold 100 bonds in the sum of $100,000, the purpose of the bonds issued being for the "widening, straightening, stumping, claying, cherting, and making permanent roads, and grading the public roads of said county and erecting the necessary bridges thereon." We are of the opinion that the defendant is chargeable with notice of the purpose for which this money could be used; and that being so, it was the duty of the bank, as "quasi treasurer" and custodian of the proceeds of the sale of the bonds, to see that they were used for the above-stated purposes only; and if it permitted them to be used for other purposes, it was an illegal act on its part, and it is responsible therefor. The question arises whether money paid out of the road-bond fund for interest on the bonds was illegally paid. We are of the opinion that, with the exception of accrued interest which was paid by the purchaser of the bonds from the date of the bonds to the date of sale, the payment of such interest was illegal. Art. 7, sec. 7, par. 2, of the constitution of Georgia (Civil Code of 1910, § 6564), provides that "any county, . . which shall incur any bonded indebtedness under the provisions of this constitution shall, at or before the time of so doing, provide for the assessment and collection of an annual tax sufficient in amount to pay the principal and interest of said debt within thirty years from the date of the incurring of said indebtedness." See, in this connection, *Woodall* v. *Adel,* 122 *Ga.* 301 (3) (50 S. E. 102) ; *Mayor &c. of Athens* v. *Hemerick,* 89 *Ga.* 674 (16 S. E. 72) ; *Oliver* v. *Elberton,* 124 *Ga.* 64 (52 S. E. 15) ; *Wilkins* v. *Waynesboro,* 116 *Ga.* 359 (42 S. E. 767). It appears, therefore, that provision is made for the payment of principal and interest on bonds which have been issued for county purposes, and evidently it is not contemplated that it should be paid in a case like the present from the road-bond funds.

Another question raised by the record is whether the act of 1917 (Ga. L. 1917, p. 375), creating the board of supervisors of

roads and revenues of Murray County, confers upon them authority to employ counsel. That act in section 8 provides that the board shall appoint a secretary who shall receive $3 per day for each day of actual service; that said board shall audit all claims against the road funds, and cause the same to be paid, etc.; but there is no authority in that act, or the other acts recited, which confers upon the board the authority to employ counsel. The purposes for which a county may levy taxes are provided for in the code. The Civil Code (1910), § 508, confers the general power for levying certain taxes; and § 513 provides specifically the purposes for which taxes may be legally levied. There is no specific authority conferred here to levy a tax to pay counsel fees; but where a county is involved in "litigation," counsel may be employed and paid out of the fund provided to pay "other lawful charges against the county." See, in this connection, *Humber* v. *Dixon*, 147 *Ga.* 480 (94 S. E. 565); *Ross* v. *Bibb County*, 130 *Ga.* 585 (61 S. E. 465); *DeVaughn* v. *Booten*, 146 *Ga.* 836 (92 S. E. 629). These cases discuss the question as to what comprises the term "litigation" as used in the constitution of Georgia (Civil Code of 1910, § 6562), in connection with the power of taxation for that purpose. We are therefore of the opinion that payments made to the secretary of the board, except his per diem, and to reimburse him for advances made on road and bridge purposes, were illegal; and this is especially true where the evidence is lacking that the board of supervisors authorized him to perform said services, or to charge a fee in connection therewith. As already stated, the defendant was chargeable in law with notice of the specific purposes for which the road-bond fund had been created, and that it could only pay warrants which were regular on their face, and which were for road and bridge purposes. See, in this connection, *American Trust & Banking Co.* v. *Boone*, 102 *Ga.* 202, 204 (29 S. E. 182, 40 L. R. A. 250, 66 Am. St. R. 167).

Applying the principles above ruled to the facts of this case, we are of the opinion that the court did not err in reversing the finding of the auditor and in making the mandamus absolute, nor in overruling the motion for new trial.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. All the Justices concur, except Atkinson and Gilbert, JJ., who dissent.*