MOBLEY, superintendent of banks, *et al. v.* HAGEDORN CONSTRUCTION COMPANY.

No. 6098. APRIL 11, 1929.

386

*Orville A. Park, C. N. Davie,* and *J. F. Kemp,* for plaintiffs in error.

*Howell, Heyman & Bolding* and *C. N. King,* contra.

HILL, J. The Hagedorn Construction Company filed suit against the Bank of Chatsworth, for a mandamus to compel the bank to pay a county warrant which it claimed was due it for building a road in Murray County. This court held, in *Bank of Chatsworth* v. *Hagedorn Construction Co.,* 156 *Ga.* 348 (119 S. E. 28), that mandamus would lie to compel the payment of a county warrant issued in its favor, and that the trial court did not err in overruling a demurrer to the petition. The case was again before this court in *Bank of Chatsworth* v. *Hagedorn Construction Co.,* 162 *Ga.* 488 (134 S. E. 310), where it was held that the bank was liable for the amount of the warrant, and this court affirmed the judgment of the lower court in making the mandamus absolute. While the first case was pending in this court the Bank of Chatsworth sold its assets to the Georgia State Bank of Atlanta. The consideration for the purchase was the assumption of the liabilities of the bank as shown by its books and by certain itemized schedules attached to the contract. After this sale the Georgia State Bank opened a branch bank at Chatsworth and continued the business formerly conducted by the Bank of Chatsworth. It continued its corporate organization and existence, and contested its liability to the construction company. Subsequently the Georgia State Bank surrendered its assets, including the Chatsworth branch bank, to the State superintendent of banks, for liquidation under the provisions of the Georgia banking act. The Hagedorn Construction Company filed its claim with the superintendent of banks, insisting that it was entitled to priority of payment, on account of the fact that the deposit with the Bank of Chatsworth was a county deposit. This claim was denied by the superintendent of banks, who rejected the claim. The present suit was brought to establish the liability as provided by the State banking act. The case was tried on an agreed statement of facts; and the trial judge after consideration of the case passed the following order:

"After argument and consideration it is ordered, adjudged, and decreed that plaintiff recover from defendants the sum of $17,725

principal, $8,364.72 interest to date, future interest at the rate of 7% per annum until paid, and $———— costs. It is further ordered, adjudged, and decreed that said sums herein found in favor of plaintiff are given priority over all claims against said defendants, except debts due the State of Georgia and debts due any county, district, or municipality of the State, including unpaid taxes, ranking as of equal dignity with debts due any county, district, or municipality of the State, including unpaid taxes. It is further ordered, adjudged, and decreed that defendants pay said amounts herein found in favor of plaintiff out of any property or funds belonging to the defendant, Georgia State Bank, in the possession, custody, or control of said defendant, subject only to prior claims and sharing proportionately with claims of equal rank and dignity as herein specified. It is further ordered, adjudged, and decreed that defendants be and they are hereby enjoined from paying out any of the funds or making distribution of the assets of the Georgia State Bank, except as herein decreed, until payment has been made of the sums herein found in favor of said plaintiff." To this judgment the plaintiff in error excepted.

After reciting the resolutions adopted by the stockholders and the board of directors of the Bank of Chatsworth, the contract entered into between the two banks provides:

"First. That this contract and agreement is for the sale of the assets of the said Bank of Chatsworth and the assumption of its liabilities by the Georgia State Bank, and is not a merger of the corporate entities of the said institutions, but on the other hand a corporate existence of the Bank of Chatsworth is hereby continued for the purpose of prosecuting its suits now instituted in its name or which may hereafter be instituted in its name, or defending suits against it, and for the purpose of taking such further corporate action as may be necessary in the premises hereafter from time to time.

"Second. It is hereby specified that the present directors of the Bank of Chatsworth shall be continued in office pending the final disposition of all such suits and business of the Bank of Chatsworth.

"Third. The Georgia State Bank hereby purchases from the Bank of Chatsworth, and Bank of Chatsworth hereby sells, aliens, transfers, sets over, and confirms unto the Georgia State Bank, certain assets of the said Bank of Chatsworth of the face value of

$322,221.01, for the agreed amount of $322,221.01, as more specifically set out in Exhibit 'A' and schedules Nos. 1 to 4, inclusive, hereunto attached and made a part hereof, it being specifically stipulated and understood that this includes the assesment of 100% against the stockholders of the said Bank of Chatsworth hereinbefore levied, which said assessment is herein considered as a part and parcel of the assets of the said Bank herein sold to the Georgia State Bank, together with all of the rights, powers, and privileges of the said Bank of Chatsworth in and to the said assessment and with full power to enforce the same by the said Georgia State Bank, either in its own name or in the name of the Bank of Chatsworth, in as full and complete a manner as the same could be enforced by the Bank of Chatsworth; it is also further stipulated, understood, and agreed that the sale to the Georgia State Bank of the assets of the Bank of Chatsworth shall include all choses in action and all of its property and rights of every kind and character.

"Fourth. As payment to the Bank of Chatsworth for the assets of the said Bank as aforesaid, the Georgia State Bank does hereby assume all of the liabilities of the Bank of Chatsworth as set out in the settlement with the said bank as shown by its books at the close of business on the 21st day of November, 1922, and also as set out in Exhibit 'B' and schedules Nos. 5 to 10, inclusive, hereunto attached and made a part hereof, the said liabilities so assumed being of an aggregate amount of $322,221.01.

"Provided, however, that a general accounting shall be made on January 1st, 1926, or as of January 1st, 1926, and the actual outcome and proceeds of the assets of the Bank of Chatsworth herein sold and transferred to the Georgia State Bank shall be computed; and if the total amount yielded by the said assets shall exceed the amount of the liabilities herein assumed, then in that event such excess, if any, shall be computed, first, to reimbursing those stockholders paying the assessment herein provided for, in proportion to the actual amounts of such assessments so paid by them."

The contract also provides that the resolutions adopted by the stockholders and board of directors of the Bank of Chatsworth are made a part of the contract. Attached to the contract and made a part thereof was a statement of the assets of the bank, marked Exhibit "A," aggregating $322,221.01, with certain schedules Nos,

1 to 4, listing the items in detail of the assets purchased. There was also a schedule of liabilities of the Bank of Chatsworth, "according to its books at the close of business November 21, 1922, and assumed by Georgia State Bank." These liabilities were separately itemized, and totaled $322,221.01, and were shown in schedules Nos. 5 to 10, inclusive, each being listed in detail. Schedule 5 was a list of individual demand deposits, the total being $41,-423.38. On this list account No. 244 appeared. This was "Murray County Road Account (bond), $89.35." There was also attached to the contract an additional schedule marked No. 11, which was not referred to in the body of the contract or in Exhibits A and B. This purported to be "schedule of slow, doubtful, and worthless assets of the Bank of Chatsworth not sold or pledged to Georgia State Bank, amounting to $33,579.76." This schedule consists of three lists of notes on hand, in judgment, or in the hands of an attorney for collection.

The decision of this case depends largely upon a construction of the contract entered into between the Georgia State Bank and the Bank of Chatsworth. It is insisted by plaintiff in error that the Georgia State Bank did not assume the claim of the Hagedorn Construction Company; that, whatever may be the legal effect of the contract between the two banks, "it is perfectly apparent that the Georg'a State Bank did not intend to assume the liability of the Bank of Chatsworth to Hagedorn Construction Co., or to Murray County with the exception of a small balance of $89.35 shown on the bank's books;" that it did not undertake to assume all liabilities, but only certain definite specified liabilities; that the exact amount of the liabilities was shown to be $322,221.01, and that every item assumed was listed and the amount specifically stated; that nowhere in this list of liabilities is Hagedorn Construction Co. named; that the liability of the Bank of Chatsworth to the construction company was not direct; that that bank had owed Murray County, the county having deposited certain funds with the bank, and that these funds had been checked out except the balance of $89.35, and the only amount shown as due Murray County was this small balance; that not only did no liability to Hagedorn Construction Co. appear in the list of liabilities attached to the contract, but no such liability appeared on the books of the Bank of Chatsworth, and the only liability to the county shown by the books was this

balance of $89.35; that there was no intention on the part of the Georgia State Bank to assume any indebtedness of the Bank of Chatsworth to the Hagedorn Construction Co. The answer to the foregoing is, that it has been judicially determined in the mandamus case that the Bank of Chatsworth did owe to the Hagedorn Construction Co. the amount claimed, and it was ordered to pay the county warrant which it held (162 *Ga.* 488, supra) ; and furthermore, the question turns largely upon the proposition as to whether, when the Georgia State Bank bought the assets of the Bank of Chatsworth, there was a merger of all the assets of the one bank in the other, so as to make the Georgia State Bank liable for the demands that were legally made against the Bank of Chatsworth. The contract between the two banks recites that the resolutions of the stockholders and directors of the Bank of Chatsworth were made a part of the contract, and these resolutions authorized the sale of the assets of the bank in consideration of the assumption of its liabilities. They also authorized the making of the contract. The resolution was "that the directors of the bank be and they are hereby authorized, empowered, and instructed to enter into a contract and agreement with the Georgia State Bank, providing for the sale of the assets of the said bank to the Georgia State Bank, and including the assessment hereinbefore levied and assumption by the said bank of the liabilities of the said Bank of Chatsworth; and further, that the acts and doings of the said board of directors in connection with the said sale to the Georgia State Bank are hereby ratified, confirmed, and approved in every respect."

The record shows that the Georgia State Bank through its vice-president, L. R. Adams, had knowledge of these proceedings both before and after the contract of November 22, 1926, was entered into. It will be noted that the case was referred to an auditor, who filed his report, to which both sides took exceptions of law and fact; and the judge upon hearing the case found in favor of a mandamus absolute. The defendant filed a motion for new trial; and this being overruled, the case was brought to this court, where it was affirmed on July 13, 1926 (162 *Ga.* 488). But plaintiff in error contends that the Georgia State Bank was to and did assume only the liabilities set out in the settlement with the bank as shown by its books at the close of business on November 21, 1922, etc., and that the claim of Hagedorn Construction Co. was not shown on the

books of the bank and was not set forth in the schedule of liabilities, and for that reason it was not assumed; and further, that the statement in the contract was that the arrangement between the Bank of Chatsworth and the Georgia State Bank was not a merger. We are of the opinion that the legal effect of the contract under review did constitute a merger, and that under the law relating to mergers the Georgia State Bank assumed all the liabilities of the Bank of Chatsworth, which we will endeavor presently to show. We are also of the opinion that the judgment of mandamus absolute in favor of Hagedorn Construction Company against the Bank of Chatsworth clearly operated as a priority. The mandamus absolute was predicated upon the fact that the Bank of Chatsworth was chargeable with having sufficient funds of Murray County in its road-bond fund to pay the county warrant issued by Murray County to Hagedorn Construction Co.; and this is so because these funds in the possession of the Bank of Chatsworth as county depository created a priority in said funds in favor of Hagedorn Construction Co. We are of the opinion that neither the Bank of Chatsworth nor the Georgia State Bank could by their voluntary action, either with or without the approval of the Georgia State Banking Department, make a transfer of the assets of the Bank of Chatsworth so as to deprive Hagedorn Construction Co. of its priority in the liquidation of the assets of the Bank of Chatsworth. We are of the opinion that under the act of 1919 (Ga. L. 1919, pp. 164 et seq., Park's Code Supp. 1922, §§ 2269(a) et seq.; Michie's Code 1926, § 2366(80)) the Georgia State Bank, under the contract under review, assumed all the liabilities of the Bank of Chatsworth. It will be observed that by this contract the Bank of Chatsworth stripped itself of its assets, and it received no consideration therefor except the obligation of the Georgia State Bank to assume its liabilities.

In *Tompkins* v. *Augusta So. Ry. Co.*, 102 *Ga.* 436, 441 (30 S. E. 992), it was held: "Where by reason of the consolidation of two corporations one of them goes entirely out of existence, and no arrangements are made respecting the liabilities of the one which ceased to exist, the corporation resulting from such combination will, as a general rule, be entitled to all the property and answerable for all the liabilities of the corporation thus absorbed." (And see, to the same effect, *Atlantic & Birmingham Ry. Co.* v. *Johnson,*

127 *Ga.* 392 (2), 56 S. E. 482, 11 L. R. A. (N. S.) 1119). Tomp-
kins had sued the Augusta Southern Railway Company on account
of being illegally ejected from its train on which he was a pas-
senger. The court granted a nonsuit on the ground that his right
of action was against the Sandersville and Tennille Railroad Com-
pany, and not against the defendant. The plaintiff excepted to
this, and to each of the rulings stated. He introduced in evidence
the contract of consolidation between the two railroad companies
named, dated February 13, 1894. This contract named the Au-
gusta Southern as the first party and the Sandersville & Ten-
nille as the second party, and recited that they were operating rail-
roads connecting with each other and forming a continuous line
between Augusta and Tennille, the railroad of the second party
being operated by the first party under a lease, and the stockholders
of the second party being ready to sell their road to the first party
on terms stated, so that the ownership of the two roads should be
merged into one ownership, etc. The judgment of the trial court
was reversed, and this court held in an opinion delivered by Fish,
J., that the contract amounted to a merger or consolidation. The
facts in the *Tompkins* case indicated that there was in the con-
tract between the two railroads a statement showing that there were
debts and liabilities of the Sandersville & Tennille Railroad Co.;
and this court held in effect that the defendant agreed to assume
the payment of all the indebtedness and liability of the Sanders-
ville & Tennille Railroad Co. See, to the same effect, *Hawkins* v.
*Central of Ga. Ry. Co.,* 119 *Ga.* 159 (46 S. E. 82) ; 4 Am. & Eng.
Enc. Law, 272 n. In 1 Thompson on Corp. (1st ed.) § 375, it is
said: "Where several corporations are united in one, and the
property of the old companies is vested in the new, the latter is
liable in equity for the debts of the former, at least to the extent
of the property received from them; and if it is also liable at law,
the legal remedy is not exclusive. The governing principle here is
that a corporation can not give away its assets to the prejudice of
its creditors; but that a court of equity will follow such assets as a
trust fund into the hands of any new custodian, the same not being
a creditor or bona fide purchaser. It is scarcely necessary to add
that, in such a case, the consolidated corporation holds the property
received from the absorbed company with notice of any trust at-
taching to it in favor of its creditors, and can not claim the rights

of a *bona fide purchaser without notice."* And see §§ 366, 382; 7 R. C. L. 181, § 155; 14A C. J. 1072, § 3659. The case of *Austin v. Smith Co.,* 138 *Ga.* 651 (75 S. E. 1048, Ann. Cas. 1913E, 1042), is not in point. In that case, where the facts were different, it was held that the contract between the selling corporation and the purchasing corporation was one of sale and not of merger; and that where there has been a bona fide sale of the property of one corporation to another, the vendee is not responsible for the existing debts of the vendor, unless those debts are expressly assumed by the vendee.

The case of *Carswell* v. *National Exchange Bank of Augusta,* 165 *Ga.* 351 (140 S. E. 755), is relied on as supporting the contentions of the plaintiff in error. In that case it was held: "Properly construed, the contract the consideration of which is involved in determining the liability of the defendant to the plaintiff in this case, did not contain an obligation upon the part of the purchasing bank to pay the obligations due by the selling bank, but only to depositors specified in a list to be furnished by the selling bank to the purchasing bank, and for the payment of whom a sufficient fund was deposited by the former; and it is to be inferred from the entire petition that the name of the plaintiff was not upon this list." It will be observed that in the *Carswell* case the court held that the contract in that case did not contain an obligation upon the part of the purchasing bank to pay the obligations due by the selling bank, but only to depositors specified "in a list" to be furnished by the selling bank to the purchasing bank, and for the payment of whom a sufficient fund was deposited by the former. In the instant case it is insisted that the Georgia State Bank did not intend to assume the liability of the Bank of Chatsworth to Hagedorn Construction Co., or to Murray County, with the exception of a small balance of $89.35 as shown on the books of the bank. But this court had held, affirming the judgment of the lower court, that the full amount due the Hagedorn Construction Co. should be paid, and not the $89.35, which they admit was due; and that being so, the plaintiffs in error are bound by that judgment which adjudicated that the Hagedorn Construction Co. was entitled to the amount as found in that case and when the Georgia State Bank took over the Bank of Chatsworth they did so with the full knowledge of this fact.

For these and other reasons which might be given, we are of the opinion that the *Carswell* case is distinguishable from the instant one.

In Am. Ry. Ex. Co. *v.* Commonwealth, 190 Ky. 636 (228 S. W. 433, 30 A. L. R. 543), it was said: "Questions concerning the responsibility of the purchasing corporation for the debts and liabilities of the selling corporation have come before the courts of the country in many cases; and it is held, practically without dissent, that, although the purchasing corporation does not assume the payment of any of the debts or liabilities of the selling corporation, it will yet be made responsible for them if there was no consideration for the sale, or if it was not in good faith, but for the purpose of defeating the creditors of the selling corporation, or where there has been a merger or consolidation of the corporations, or where the purchasing corporation took over from the stockholders all of the stock of the selling corporation, or where the transaction amounts to a mere reincorporation or reorganization of the selling corporation. It is also generally agreed that when these conditions exist the purchasing corporation will be responsible for all the debts and liabilities of the selling corporation, without reference to whether these debts or liabilities were created by contract or arose out of tort, or were liquidated or unliquidated." And see Grice *v.* Am. Ry. Ex. Co. (Tex. Civ. App.), 248 S. W. 82; Brabham *v.* So. Ex. Co., 124 S. C. 157 (117 S. E. 368); Gibson *v.* Am. Ry. Ex. Co., 195 Iowa, 1126 (193 N. W. 274); Am. Ry. Ex. Co. *v.* Snead, 96 Okla. 278 (221 Pac. 1032); Peters *v.* Am. Ry. Ex. Co. (Mo. App.), 256 S. W. 100; Am. Ry. Ex. Co. *v.* Downing, 132 Va. 139 (111 S. E. 265); Terry Packing Co. *v.* So. Ex. Co., 143 S. C. 1 (141 S. E. 144); Am. Ry. Ex. Co. *v.* Ky., 273 U. S. 269 (47 Sup. Ct. 353, 71 L. ed. 639); Valley Bank *v.* Malcomb, 23 Ariz. 395 (204 Pac. 207); Williams *v.* Com. Nat. Bank, 49 Oregon, 492 (90 Pac. 1012, 91 Pac. 443, 11 L. R. A. (N. S.) 857); Blair *v.* St. L. R. Co., 22 Fed. 36. In Okmulgee Window Glass Co. *v.* Frink (U. S. Circuit Court of Appeals), 260 Fed. 159, it was held: "Where a new corporation in its essence is but a continuation of the activities and interests of the old company, which retains only its franchise as a corporation, a direct recovery is allowable in equity against the new company upon a contract of the old. . . Upon the dissolution of a corporation which has ceased to do business,

its stockholders having organized a new corporation to carry on the business of the old, and to take over its assets, stock being exchanged share for share, the assets of the old corporation so taken over constitute a trust fund for the payment of the debts of the former company. . . Where a corporation has ceased to carry on business and has been dissolved, and a new corporation has been organized to carry on the business and take over its assets, personal judgment may be obtained against it by the creditors of the former company to the amount of the value of the property so taken over by the new corporation and converted to its use."

In N. W. Perfection Tire Co. v. Perfection Tire Corp., 125 Wash. 84 (215 Pac. 360), the second headnote is as follows: "Where a creditor corporation so completely took over an insolvent debtor corporation as to in fact absorb it and continue its business, and for all practical purposes assumed to become the successor of its organization, business, and property, the creditor corporation thereby impliedly assumed to pay all the insolvent's obligations existing at the time it was so taken over, and can not insist upon being held only as a trustee for creditors and entitled to account to them in a court of equity for the property taken over." And see Auglaize Box Board Co. v. Hinton, 100 Ohio St. 505 (6) (126 N. E. 881). In Love v. Bracamonte, 29 Ariz. 227 (3) (240 Pac. 351), it was held: "Transferee of insolvent corporation takes its assets subject to payment of its legitimate debts and holds same in trust for that purpose, especially where transferee has been organized for specific purpose of absorbing all assets of old concern." In Goodwin v. Am. Ry. Ex. Co., 220 Mo. App. 695 (294 S. W. 100), it was held: "When one corporation takes over all the tangible assets and properties of another, and issues shares of stock as sole payment for such assets and properties, it takes the same subject to the debts and liabilities of the old corporation, in a sum equal to the value of the assets taken." In Ingram v. Prairie Block Coal Co. (Mo.), the third headnote (as stated in 5 S. W. (2d) 413), is as follows: "Where one corporation purchases stock and assets of another, and circumstances are such that the purchasing corporation is a mere continuation of the selling corporation, or the transaction is fraudulent in fact, purchasing corporation ipso facto becomes liable for debts and liabilities of the selling corporation." And see Blackinton v. U. S., 6 Fed. (2d) 147,

148, where it was said by Circuit Judge Stone: "The trustee contends that this is an instance of the purchase in good faith, for a valuable consideration, by one corporation of the assets of another. Obviously it is nothing of the sort. It is the taking over of all assets and leaving nothing in their place. Clearly this can not be done in any way that will leave the creditors of that company without remedy. Such an absorption of the assets carries with it necessarily a liability for the debts which those assets might have paid. There is no question that the assets taken over were ample to pay these claims, nor is it challenged that if these claims are valid at all, that they are of a class requiring preference over other claims against the Interstate [Tailoring Co.]." In Sudakovick v. Central Bank of Bingham, 62 Utah, 24 (218 Pac. 113, 116), it was said: "We do not agree with appellant's contention that it assumed only such liabilities as were listed and acknowledged. There was no limitation expressed in the offer of defendant, and it must have been understood by the receiver, the bank, the commissioner and the court as well, that the settlement included every person who might be found to be a depositor in the Citizens Bank."

The Civil Code (1910), § 2245, declares: "Upon the dissolution of a corporation, for any cause, all of the property and assets of every description belonging to the corporation shall constitute a fund, first, for the payment of its debts, and then for equal distribution among its members." Where one corporation takes over all of the assets of another corporation without paying to the selling corporation the value of its assets, the purchasing corporation becomes liable, at least to the extent of the value of the assets taken over, to settle the debts of the selling corporation in the order of priority of the various creditors. See *Hightower v. Thornton,* 8 *Ga.* 486 (52 Am. D. 412); *Hargrove v. Chambers,* 30 *Ga.* 580; *White v. Davis,* 134 *Ga.* 274 (67 S. E. 716); *Fitzpatrick v. McGregor,* 133 *Ga.* 332 (65 S. E. 859, 25 L. R. A. (N. S.) 50); *John V. Farwell Co. v. Jackson Stores,* 137 *Ga.* 174 (73 S. E. 13); *Perkins v. Talmadge,* 147 *Ga.* 527, 532 (94 S. E. 1003).

But regardless of whether the contract in the instant case amounts to a merger or not, two corporations can not fraudulently enter into a contract of sale by which the selling corporation is stripped of all its assets, the effect of which is to hinder, delay, or

defraud the creditors of the selling corporation. In such case equity will follow such assets as a trust fund into the hands of the purchasing or consolidated corporation. The purchasing corporation, under the facts of this case, holds the property received from the other with notice of any trust attaching to it in favor of the seller's creditors, and the purchaser can not claim the rights of a bona fide purchaser without notice. 1 Thompson on Corp. (1st ed.) § 375. In the instant case the vice-president of the purchasing corporation was present and actually participated in the execution of the contract and was familiar with the status of affairs, and it can not be said that the purchasing corporation was an innocent purchaser. The Georgia State Bank, the purchaser, took into its possession and control all the assets of the Bank of Chatsworth, the selling corporation, and thereafter operated a branch bank in the same location in Chatsworth. In addition to the authorities cited and what has been said above, attention is called to the fact that the Hagedorn Construction Company, which had obtained a mandamus absolute against the Bank of Chatsworth, was not a party to the contract of purchase and sale of the assets of the Bank of Chatsworth, and it can not be held bound by any transfer of the assets of the Bank of Chatsworth to the Georgia State Bank. We are of the opinion that under the pleadings; the evidence, and the agreed statement of facts in this case, the trial judge did not err in the judgment rendered, for any reason assigned.

*Judgment affirmed. All the Justices concur, except*

BECK, P. J., and ATKINSON, J., dissenting. In view of what was said in the case of *Carswell* v. *National Exchange Bank of Augusta,* 165 *Ga.* 351 (supra), and the reasoning in that case, we are of the opinion that the rulings there made should be applied to the present case; and making that application we can not concur in the judgment that there was a merger of the purchasing and selling banks, nor that there was any responsibility on the part of the purchasing bank for any of the debts of the selling bank, except those which the purchasing bank expressly agreed to pay. Nor do we think that it can be said as a matter of law that the contract between the two banks was fraudulent.