## CARSWELL *v.* NATIONAL EXCHANGE BANK OF AUGUSTA.

1. Properly construed, the contract the consideration of which is involved in determining the liability of the defendant to the plaintiff in this case did not contain an obligation upon the part of the purchasing bank to pay the obligations due by the selling bank, but only to depositors specified in a list to be furnished by the selling bank to the purchasing bank, and for the payment of whom a sufficient fund was deposited by the former; and it is to be inferred from the entire petition that the name of the plaintiff was not upon this list.

2. Nor can the plaintiff recover in this case on the theory that there was a merger or consolidation of the two banks. The purchase by the defendant bank of certain specified assets of the Augusta Savings Bank, that is, "all the notes and bills receivable, . . and also all the United States bonds and municipal bonds of said Savings Bank," and the further agreement between the purchasing and the selling bank that

---

Banks and Banking, 7 C. J. p. 491, n. 49 New.

Consolidation, 12 C. J. p. 530, n. 91.

Corporations, 14a C. J. p. 1054, n. 4; p. 1055, n. 12, 14, 20.

upon the completion of the sale of said securities the latter bank should deposit with the former a sufficient sum in cash "to meet, pay off, and discharge all of the liability of the Augusta Savings Bank to its depositors for the purpose of discharging its liability to said depositors," and that thereupon the Exchange Bank "assumes all the liability of the Augusta Savings Bank to its said depositors and obligates and binds itself to pay the same," the Savings Bank agreeing to furnish to the purchasing bank a duly certified list of all its depositors together with the amounts due them, did not constitute a merger and consolidation of the two banks, although the transaction between the two banks in certain resolutions and letters introduced in evidence is referred to as a consolidation.

No. 5987. December 15, 1927.

Equitable petition. Before Judge Franklin. Richmond superior court. April 2, 1927.

*Pierce Brothers,* for plaintiff.

*Callaway & Howard,* for defendant.

Beck, P. J. Mrs. Lula W. Carswell brought suit against the National Exchange Bank of Augusta (hereinafter called the Exchange Bank, or defendant), alleging, that defendant is a national bank organized under the laws of the Congress of the United States, with its banking house and principal place of business in Augusta, Georgia; that for a number of years prior to August 5, 1921, the Augusta Savings Bank, a banking corporation organized under the laws of Georgia, with its principal place of business in Augusta, was engaged in a general banking business in said city, soliciting and receiving deposits from the public; that during the year 1922, and for many years previous thereto, the operation, control, and management of the Augusta Savings Bank and the National Exchange Bank were in effect one and the same, both banks having the same president and general manager; that petitioner was a depositor in the Savings Bank in 1922, having on deposit about $7,000, which was duly entered upon a pass-book issued to her by the bank, the bank agreeing to pay petitioner four per cent. interest per annum thereon; that in June, 1922, her husband stated to her that he was financially involved and owed large sums of money to the Savings Bank, that the president of that bank was going to take her money on deposit in payment of this debt, and that unless she signed a check payable to said bank for the full amount of her deposit, the bank would proceed against her husband and put him in bankruptcy; that her husband importuned her to accede to the demands of the president of the

bank, whereupon she signed a check for the full amount of her deposit, making it payable to the Savings Bank, and gave it with her pass-book to her husband, who delivered them to the Savings Bank; that the president of the bank conceived the entire scheme for the purpose of procuring the payment of her husband's debt, knowing the financial embarrassment of her husband and using him as an instrument in the execution of such scheme; that her act in signing the check in the circumstances was void; that she did not receive anything of value by reason of signing the check and surrendering her pass-book; that the full amount of her check, $7115.53, which was the total amount of her deposit, was credited on the indebtedness of her husband to the bank; that her money was thus fraudulently obtained by the president of the Savings Bank in June, 1922; that in December, 1922, the Savings Bank was merged with the Exchange Bank, the latter bank taking over all the liabilities of the former; that all of the books, ledgers, deposit-slips, pass-books, checks, and other records kept by the Savings Bank were taken over by the Exchange Bank; and that at the time petitioner's money was fraudulently obtained, as contended, the same person was president of both banks.

Petitioner prayed, that the Exchange Bank be required to bring into court her said check; that the same be declared null and void; that the Exchange Bank be required to produce her pass-book; that any entries therein showing payment by petitioner be canceled and declared null and void; that the books and records of the Exchange Bank be made to show petitioner as a depositor therein for the full amount above stated, with interest at four per cent., according to the terms of her deposit in the Savings Bank; and that she have judgment against the Exchange Bank for such sum with interest; and for other equitable relief. The plaintiff amended her petition, alleging, in substance, that during November, 1922, when said merger took place, the National Exchange Bank assumed all liability of the Augusta Savings Bank to petitioner among its other depositors, and bound and obligated itself to pay the same with interest; that Percy E. May, president, and the other officers of the Exchange Bank, knew at that time that petitioner was a depositor in the Savings Bank in the sum above set forth; and that the scheme of May in procuring her check in payment of her husband's debt rendered it illegal and void, May

being president of both banks, and the former cashier of the Savings Bank having been elected to official position in the Exchange Bank at the time the latter took over the liabilities of the Savings Bank, he also knowing of the fraudulent scheme. Other amendments were filed, showing the relation of the Savings Bank and the Exchange Bank to each other, and the relations of certain officers named to both of the banks. The court sustained a general demurrer to the petition as amended, and dismissed the action; and the plaintiff excepted.

Conceding that the circumstances in which the plaintiff signed the check payable to the Augusta Savings Bank for the amount of her deposit and delivered it, with her pass-book which had been issued to her by the Savings Bank, to her husband, for delivery to the bank in payment of the indebtedness of her husband to the bank, were such as to render the bank that received the check liable to her for the full amount of her deposit, because the check was drawn in payment of her husband's debt under circumstances that amounted to duress, nevertheless no part of this liability was thrown upon the Exchange Bank. The Savings Bank and the Exchange Bank were separate and distinct entities; they were two corporations. The fact that the same person was president of both banks and that there were other persons who were directors in both banks did not alter this fact, even though knowledge of such president or any of the directors might be ascribed to both banks. The two banks were separate and distinct, and continued so as long as the Savings Bank existed. When Mrs. Carswell drew her check and delivered it to her husband and also delivered her pass-book which had been issued to her by the Savings Bank, if this was done in pursuance of a scheme devised by the Savings Bank or its officers whereby Mrs. Carswell should pay the debt of her husband, the bank was still liable. But whether the liability was that of a bank to a depositor is not decided. We pretermit any discussion of that question; for the court is of the opinion that if, because of the circumstances in which the plaintiff signed her check, the liability of the Savings Bank to her for the amount of her deposit continued to be a deposit liability on the part of the Savings Bank, we do not think that this liability became a liability of the Exchange Bank under the contract between the two banks, under the terms of which the Exchange Bank bought the assets of the Sav-

ings Bank and assumed its liabilities as therein specified. The contract last referred to is as follows:

"This agreement and contract entered into this — day of November, 1922, between The Augusta Savings Bank, a corporation under the laws of said State, of Richmond County, Georgia, as party of the first part, and The National Exchange Bank of Augusta, a banking corporation under the acts of Congress, of said county and State, as party of the second part, witnesseth: That whereas the board of directors of The National Exchange Bank of Augusta, at its regular meeting held on the — day of October, 1922, adopted a resolution authorizing and directing the finance committee of said board to enter into a contract with The Augusta Savings Bank, of Augusta, to purchase the bills receivable and notes of said Savings Bank at their present value, and to purchase the United States bonds and municipal bonds owned by said Savings Bank at their fair market value, and in said contract to provide that upon deposit by said Savings Bank in The National Exchange Bank of sufficient funds to pay all of the depositors of The Augusta Savings Bank, to obligate The National Exchange Bank to assume all liability to its depositors and to pay the same off when demanded and called for in the usual banking manner; and whereas thereafter, at a meeting of the stockholders of The Augusta Savings Bank, called by resolution of the board of directors of said bank, written notice of which, stating the purpose of the meeting, was mailed to each stockholder, and at which meeting there were present either in person or represented by proxy, 974 shares of the capital stock of said Savings Bank, out of a total of 1,000 shares, it was unanimously resolved that said bank go into voluntary liquidation and be closed, and surrender its charter and franchise as a corporation to the State of Georgia, and it was further resolved that the board of directors of The Augusta Savings Bank, through its finance committee, be authorized to enter into a contract with The National Exchange Bank of Augusta for the sale by said Savings Bank to The National Exchange Bank of all of the notes and bills receivable of the Savings Bank which the said National Exchange Bank could legally buy, at their present value, and for the sale of all the United States bonds and municipal bonds of said Savings Bank at their fair market value to said National Exchange Bank, and in said contract to provide for the

deposit by said Savings Bank in The National Exchange Bank of sufficient funds to pay all of the depositors of The Augusta Savings Bank upon the agreement and obligation on the part of said National Exchange Bank to assume all liability to said depositors and to pay the same off when demanded or called for in the usual banking manner:

"Now therefore, in pursuance of the authority in said resolution contained, each of said banks, acting by and through the finance committee of its respective boards, does hereby enter into the following agreement and contract:

"1.    The Augusta Savings Bank hereby agrees to sell, and The National Exchange Bank hereby agrees to buy, all of the notes and bills receivable of said Savings Bank which the said National Exchange Bank can legally buy, at their respective values at the time of the transfer and assignment thereof; also all of the United States bonds and municipal bonds of said Savings Bank, at their fair market value, the price of all of said securities to be paid for in cash at the time of the transfer and delivery thereof.

"2.    It is further agreed between said parties, that, upon the completion of the sale of said securities, The Augusta Savings Bank shall deposit in The National Exchange Bank a sufficient sum in cash to meet, pay off, and discharge all of the liabilities of said Savings Bank to its depositors, for the purpose of meeting, paying off, and discharging its liabilities to said depositors; and upon said deposit being so made, The National Exchange Bank hereby assumes all of the liability of The Augusta Savings Bank to its said depositors, and obligates and binds itself to pay off the same when demanded or called for in the usual banking manner.

"3.    It is further agreed between said parties that at the time The Augusta Savings Bank makes said deposit in The National Exchange Bank for the purpose of meeting its liability to its depositors, it shall furnish to The National Exchange Bank an accurate, correct, and certified list of all of its depositors, and with a statement of the correct amount due to each of said depositors, together with all information in its possession, to enable said National Exchange Bank to identify said depositors.

"4.    It is further agreed that after said deposit shall have been made in The National Exchange Bank for the purpose of paying said depositors, said banks shall give due notice thereof by adver-

tisement, sufficient to put the depositors of The Augusta Savings Bank on full notice of said arrangement for the payment of their deposit accounts.

"In witness whereof said parties have each caused these presents to be properly executed in the name of said banks, by the respective finance committees and boards of trustees of each of said banks, the day and year first above written."

There had been, before the execution of this final contract and agreement between the two banks, certain resolutions of the banks separately, and advertisements of the transaction between the two banks and notice of the consummation of the agreement, which referred to the entire transaction as a merger or consolidation. But the essential character of the transaction is to be determined by this final contract between the two banks; and we do not think that under it the Exchange Bank became liable for any of the debts or obligations of the Savings Bank except those that are specified. The duties and obligations of the two banks relatively to each other were set forth in this contract. We do not think that this amounted to a merger of the two banks, using the word "merger" in the sense of a consolidation, as it is frequently used. "By consolidation in its proper and more restricted sense is meant a union, merger, blending, or coalescence of two or more corporations in one corporate body, whereby, in general, their property, powers, rights, and privileges enure to, and their duties and obligations devolve upon, a new organization thus called into being, and they cease to exist except constructively in certain cases, as, for instance, where the jurisdiction of the courts and the power of the State to tax and regulate are concerned. It has been said that, rightly understood, there never can be a consolidation of corporations except where all the constituent companies cease to exist as separate corporations and a new corporation, the consolidated corporation, comes into being." 7 R. C. L. 155. And again, "The mere purchase by one corporation of the property and franchise of another corporation is not a consolidation of the two corporations. Both in the nature of the transaction and the legal consequences flowing from it, a purchase by one corporation of the franchises and property of the other is something very different from a consolidation by two corporations of the franchises and property of both. The purchase by one corporation of the prop-

erty of another is not different in law from a similar contract between individuals, except, perhaps, in the fact that legislative authority may be required in the one case and not in the other." Id. 156. Under the contract in this case, which it is insisted amounted to a merger in the sense of a consolidation, there was an agreement to "sell" upon the part of the Savings Bank and an agreement to "buy" upon the part of the Exchange Bank, and the property and assets thus sold by one and bought by the other were specified. The specification of the assets sold is in the following terms: "all of the notes and bills receivable of said Savings Bank which the said National Exchange Bank can legally buy, at their respective values at the time of the transfer and assignment thereof; also all of the United States bonds and municipal bonds of said Savings Bank, at their fair market value, the price of all of said securities to be paid for in cash at the time of the transfer and delivery thereof." And then it was also agreed that upon the completion of the sale "of said securities," the Savings Bank should deposit in the Exchange Bank a sufficient sum in cash to pay off and discharge all of the liabilities of the Savings Bank "to its depositors," and, "upon said deposit being so made, the Exchange Bank assumes all the liability of the Savings Bank to its depositors and obligates itself to pay off the same when demanded or called for in the usual banking manner." And the Savings Bank, under the terms of the same contract and as a part thereof, was to "furnish to the Exchange Bank an accurate, correct, and certified list of all its depositors, with a statement of the correct amount due each of the depositors." It is not alleged that Mrs. Carswell's name was upon the list of depositors furnished to the Exchange Bank by the Savings Bank, and the inference from the entire petition is that it was not there. And we conclude that even if there was a deposit liability on the part of the Savings Bank at the time this contract was signed, that liability was not assumed by the Exchange Bank. Considering all the allegations of the petition, no liability of the Exchange Bank to the plaintiff in this case was shown, and the court properly sustained the general demurrer to the petition.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Hill, J., who dissent.*