38307. BOSS v. BASSETT FURNITURE INDUSTRIES OF NORTH CAROLINA, INC. et al.

HILL, Presiding Justice.

The Court of Appeals certified the following:

"The Court of Appeals desires instructions from the Supreme Court upon the following questions, a determination of which is necessary for a decision of the issues in this case:

"Boss contracted to design furniture for Barwick Industries, Inc., in exchange for its agreement to pay him royalties upon the sale

of that furniture. The contract provided that the design documents and the manufacturing dies made therefrom were to be the property of Barwick but that Boss would have a right of first refusal in the event Barwick chose to sell them. Subsequently, Barwick sold its furniture plant in Dublin, Georgia, to appellee Bassett Furniture Industries of North Carolina, Inc. Barwick and Bassett expressly agreed in their contract of sale not to comply with UCC — Bulk Transfers, Barwick agreeing to indemnify Bassett for the payment of any claims, demands or liabilities not listed in the contract. The manufacturing dies and design documents of the furniture design created by Boss were included in that sale. Barwick allegedly did not offer Boss his contractual right of first refusal nor continued making royalty payments.

"Boss initiated this suit against both Barwick and Bassett in an attempt to protect his contractual right to royalties by seeking damages against Bassett, which allegedly has sold furniture manufactured from the design without paying any royalties. Bassett denied any knowledge of the royalty contract at the time of the sale from Barwick. This appeal is from a grant of summary judgment in favor of Bassett. This case against Barwick remains pending in the trial court.

"Boss' complaint alleges in pertinent part that Bassett assumed Barwick's contractual obligation to pay royalties on furniture lines using the Boss design; that Bassett acquired the dies, inventory, and design documents subject to an equitable interest in favor of Boss; that Bassett has been unjustly enriched through its acquisition and use of the dies, inventory and design documents without making royalty payments to Boss; that Bassett has intentionally and maliciously interfered with Boss' contractual right to first refusal regarding the dies and design documents; and that Bassett conspired with Barwick to breach the contract and defraud Boss of his rights thereunder.

"1. Does the transfer of inventory and assets from Barwick to Bassett .constitute a bulk transfer under the provisions of the Uniform Commercial Code — Bulk Transfers? Code Ann. § 109A-6—101 et seq.

"2. If the answer to the first question is in the affirmative, is Boss a 'creditor' within the scope of UCC — Bulk Transfers?

"3. If the answer to the second question is in the affirmative, is Boss limited to pursuing *only* a remedy against Barwick and/or the goods or proceeds in the possession of Bassett and precluded from pursuing a remedy against Bassett personally? *Indon Industries v. Charles S. Martin Distrib. Co.,* 234 Ga. 845 (218 SE2d 562) (1975). *American Express Co. v. Bomar Shoe Co.,* 127 Ga. App. 837

(195 SE2d 479) (1973); *American Express Co. v. Bomar Shoe Co.,* 125 Ga. App. 408 (187 SE2d 922) (1972).

"4. Also, if the answer to the second question is in the affirmative, does the agreement between Barwick and Bassett not to comply with the UCC's bulk transfer provisions constitute a 'concealment' so as to make the twelve (12) month limitation of actions and levies thereunder inapplicable? Compare E. J. Trum, Inc. v. Blanchard Parfums, Inc., 306 NYS2d 316 (33 A.D.2d 689, 6 UCC Rep. Serv. 1261) (1969)."

It is apparent that consideration of the facts is essential in ascertaining the answers to these questions. We therefore deem it appropriate to consider other relevant facts of record and to approach the questions in reverse order.

1. Question 4 involves the statute of limitations and tolling of it by concealment of the bulk transfer. However, the record contains a letter dated May 18, 1976, showing that Boss knew of the sale of Barwick's furniture company to Bassett. Therefore, whether or not there was a concealment that would toll the running of the 12-month statute of limitations under Code Ann. § 109A-6—111,[1] it is clear that more than 12 months elapsed from the discovery of the sale (May 18, 1976, or prior thereto), and March, 1978, when this suit was brought. Therefore, we find it unnecessary to answer the fourth certified question.

2. Having found that any action under the bulk transfer provisions of the UCC would be barred by the time limitation of Code Ann. § 109A-6—111, we go to the third certified question: "... is Boss limited to pursuing *only* a remedy against Barwick and/or the goods or proceeds in the possession of Bassett and precluded from pursuing a remedy against Bassett personally? *Indon Industries v. Charles S. Martin Distrib. Co., Inc.,* 234 Ga. 845 (218 SE2d 562) (1975). *American Express Co. v. Bomar Shoe Co.,* 127 Ga. App. 837 (195 SE2d 479) (1973); *American Express Co. v. Bomar Shoe Co.,* 125 Ga. App. 408 (187 SE2d 922) (1972)." This question asks whether the bulk transfer remedies are Boss' exclusive remedies against Bassett.

In the earliest of the three cases cited, *American Express Co. v. Bomar Shoe Co.,* 125 Ga. App. 408, supra, a creditor of the transferor sued the transferee to collect the past due account of the transferor. The court found that (1) failure to comply with the bulk transfer

---

[1] "No action under this Article shall be brought nor levy made more than 12 months after the date on which the transferee took possession of the goods unless the transfer has been concealed. If the transfer has been concealed, actions may be brought and levies made within 12 months after its discovery."

provisions of the UCC made the transfer "ineffective as to any creditor of the transferor," Code Ann. §§ 109A-6—104 (1), 109A-6—105; (2) such creditor has as a remedy any remedy he might have against the transferor or against the goods, e.g., attachment, garnishment, or levy after judgment against the transferor. The court concluded that suit on open account against the transferee was not maintainable.

In the second case cited, *American Express Co. v. Bomar Shoe Co.,* 127 Ga. App. 837, supra, it appears that American Express amended its complaint to allege a fraudulent transfer and to seek damages for fraud. The complaint alleged that the transferee was a wholly-owned subsidiary of another creditor of the transferor and that the bulk transfer was made to satisfy the debt owed to the transferee's parent company. The court held that an action for fraud was not such an action as could be maintained against the transferee under our bulk transfer law. While the court's stated holding is correct, that case should not be understood as holding that a creditor of a transferor cannot maintain an action for fraud against the transferor and transferee where an action for fraud would lie without reliance on the bulk transfer law.

The third case cited, *Indon Industries v. Charles S. Martin Distrib. Co.,* supra, was a conflict of laws case involving the bulk transfer statutes of limitations of Georgia and South Carolina. It held that the remedies of the creditor against the transferee were created by the bulk transfer law and hence were governed by the statute of limitations of the state enacting the law where the bulk transfer occurred. *Indon* did not deal with the question of whether common law remedies, if any, against a transferee were abolished by the bulk transfer law.

The UCC, Code Ann. § 109A-1—103, provides that "[u]nless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, mis-representation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." The bulk transfer article does not declare that the remedies therein provided are exclusive; indeed that article does not specify any remedies.

In *McClain v. Laurens Glass Co.,* 127 Ga. App. 316 (193 SE2d 194) (1972), it was held that a creditor could proceed against the transferor notwithstanding the bulk transfer law. We find nothing in the UCC to indicate that Boss may not proceed on any common law or equitable cause of action he may have against the transferee, notwithstanding the bulk transfer law. On the contrary, the UCC

provides that unless displaced by particular provisions, the principles of law and equity, including fraud, etc., shall supplement its provisions. Code Ann. § 109A-1—103, supra.

The relationship of the plaintiff in this case to the transferor was multifaceted and he may pursue his common law and equitable remedies, if any, against the transferee without reliance on the bulk transfer law. We thus answer question 3 in the negative.

3. Having found that this action was brought more than 12 months after discovery of the transfer and hence any action under the bulk transfer provisions of the UCC would be barred, and having found that the availability of an action under the bulk transfer provisions of the UCC does not preclude Boss' pursuit of other remedies, if any, against the transferee, we find it unnecessary to the resolution of this case to answer questions 1 and 2.

*Certified question 3 answered in the negative. All the Justices concur.*

DECIDED MARCH 10, 1982.

*Kilpatrick & Cody, Matthew H. Patton, Kevin B. Buice,* for appellant.
*Lokey & Bowden, Hamilton Lokey, R. Daniel McGinnis, Troutman, Sanders, Lockerman & Ashmore, Ezra H. Cohen, Corneill A. Stephens,* for appellees.