## 62125. BOSS v. BASSETT INDUSTRIES OF NORTH CAROLINA, INC. et al.

BANKE, Judge.

Boss contracted to design furniture for Barwick Industries, Inc., in return for Barwick's agreement to pay him royalties on the sale of that furniture. The contract provided that the design documents and the manufacturing dies made from them were to be the property of Barwick but that Boss would retain a right of first refusal in the event Barwick chose to sell them. Upon termination of the contract, Barwick was to continue to pay royalties to Boss on the sale of furniture manufactured from his designs.

Barwick subsequently sold its furniture plant to Bassett Furniture Industries of North Carolina, Inc., and Bassett Furniture Industries, Inc. (hereinafter referred to together as "Bassett"). Although Boss's designs and the manufacturing dies produced from them were among the assets transferred to Bassett, the contract of sale did not list Barwick's obligation to pay royalties to Boss among the liabilities assumed by Bassett. Boss brought this suit against Barwick and Bassett to recover both lost royalties and damages for the breach of his contractual right of first refusal. He contends that Bassett impliedly assumed these obligations by accepting and using his designs with actual or constructive knowledge of the arrangement between him and Barwick. He also seeks to recover on the theories of unjust enrichment, intentional interference with contractual rights, and conspiracy to interfere with contractual rights. This appeal is from the grant of Bassett's motion for summary judgment. The suit against Barwick remains pending in the court below. We previously certified the case to the Supreme Court to determine whether the Bulk Transfer provisions of the UCC precluded Boss's common-law claims, and, answering this question in the negative, the Supreme Court has returned the case to us. *Boss v. Bassett Furniture Indus.,* 249 Ga. 166 (288 SE2d 559) (1982).

In support of its motion for summary judgment, Bassett's president, vice-president, internal auditor, and general counsel each submitted identical affidavits stating that Barwick's contractual relationship with Boss had not been mentioned during the negotiations for the purchase of the plant. The central issues in this

appeal are whether these affidavits negated the plaintiff's allegations that Bassett purchased and used his designs with actual or constructive knowledge of Barwick's obligations to him and whether, in any event, Bassett may be held liable for breach of these obligations. *Held:*

1. The statements contained in the affidavits do not refute the plaintiff's factual allegations. Each of the four Bassett officers stated that "at no time during the negotiations . . . was any mention ever made" of a contractual relationship between the plaintiff and Barwick, that "at no time during the negotiations" was he "made aware" of the plaintiff's claims, that he had no knowledge of the "written contract" between Boss and Barwick during the negotiations, and that he did not learn that the plaintiff "was claiming rights under his contract with Barwick" until three years after the sale took place. These statements are not, strictly speaking, inconsistent with the plaintiff's allegations that at the time the sale took place Bassett was aware that he had designed furniture for Barwick, that Barwick was obligated to pay him royalties on the sale of furniture made from these designs, and that he had a right of first refusal in the event the designs and dies were sold. Furthermore, three of the affiants admitted that they had been aware during the negotiations that the plaintiff had been employed to design furniture for Barwick, and at least one of them stated in his deposition that it was not an unusual practice in the furniture industry for designers to be compensated on the basis of royalties. This record does not demand the conclusion that Bassett acted without knowledge of Boss's rights.

2. We proceed to the question of whether, assuming Bassett was in fact aware of the plaintiff's rights, it may be charged with liability for breach of either the royalty obligation or the right of first refusal.

"Where a contract or undertaking is personal, it binds only the original parties and those who may assume the obligation or ratify or adopt the contract, even though the contract contains a provision that it is binding upon the successors and assigns of one of the contracting parties. (Cits.) A third person may, of course, assume the obligation expressly in writing, or he may do so by implication where his conduct manifests an intent to become bound. (Cits.) In the latter event all the circumstances must be considered, such as the subject matter of the contract, the third person's acts and words, whether he acquiesced in the terms of the contract, performed its obligations, or accepted the benefits." *Central of Ga. R. Co. v. Woolfolk Chem. Works,* 122 Ga. App. 789, 791-792 (178 SE2d 710) (1970), citing *Greer v. Pope,* 140 Ga. 743 (79 SE 846) (1913). Although the burden of

proving an express or implied assumption is on the claimant at trial, the defendant as movant on motion for summary judgment, has the burden of proving that an assumption did not occur. See *Central of Ga. R. Co.,* supra, at 795-796.

There can be no question that Barwick's alleged obligation to give the plaintiff first refusal on the sale of the designs was a personal one, since it could be performed only by Barwick. It follows that Bassett cannot be charged with liability for the alleged breach of this obligation. The obligation to pay royalties, on the other hand, was one which Bassett was fully capable of discharging after the sale. Furthermore, since it involved merely the payment of a liquidated sum of money, no personal attributes or skills were necessary to perform it. Indeed, it has been held that where the creator of "intellectual property" such as the designs involved in this case transfers his creation subject to a reservation of rights, and the transferee in turn transfers it to a third party who has knowledge of the reservation of rights, the latter is automatically bound to honor the reservation. See In re Waterson, Berlin & Snyder Co., 48 F2d 704, 710 (2d Cir. 1931) (transfer of music copyrights); Standard Oil Co. v. Clark, 163 F2d 917, 930 (2d Cir. 1947), aff'g. 64 FSupp. 656 (S.D.N.Y. 1945) (transfer of patents); Barnes v. American Brake-Beam Co., 238 Ill. 582 (87 NE 291) (1909) (transfer of patent); In re Tidy House Products Co., 79 FSupp. 674 (S.D. Iowa 1948) (transfer of trademark and trade name).

The cases cited by Bassett do not demand a conclusion that the subject matter of the contract between Boss and Barwick rendered it incapable of being assumed by implication. The case of *Greer v. Pope,* supra, is distinguishable in that the obligation at issue there involved the performance of personal services rather than merely the payment of money. Also distinguishable are *Hunter v. Benamy Realty Co.,* 115 Ga. App. 829 (156 SE2d 160) (1967), and *James Talcott v. Roy D. Warren Commercial,* 120 Ga. App. 544 (171 SE2d 907) (1969), wherein this court concluded that a lessor's obligation to pay a monthly commission to a broker was personal in nature and accordingly did not bind a subsequent grantee of the property. Those cases involved transfers of real rather than personal property, and such transfers are governed by Code § 29-301 and a line of cases dealing with covenants appearing in real estate deeds and leases. See, e.g., *Goldberg v. Varner,* 72 Ga. App. 673 (2) (34 SE2d 722) (1945). Such covenants are always considered personal, and thus unenforceable against a transferee, if they do not "run with the land." See generally Pindar, Georgia Real Estate Law, § 19-181, and cases cited therein.

Having determined that Barwick's obligation to pay royalties

was one which was capable of being assumed by implication and having determined that Bassett failed to eliminate all material issues of fact on this issue, it follows that the trial court erred in granting Bassett's motion for summary judgment as to this claim. It also follows that material issues of fact exist on the unjust enrichment claim, the general rule being that where nothing remains to be done on a contract but to make payment, the payment may be enforced by an assumpsit action as well as by a breach of contract action. See generally 1 Ency. Ga. Law, Actions, § 23.

3. We also find that material issues of fact remain as to the claims for malicious interference with contractual rights and conspiracy to interfere with property rights. While there is nothing in the record to support Boss's allegation that Bassett intended to defeat his right of first refusal, there is no evidence which refutes this allegation, either. Inducing one to breach his contract with another is an actionable tort under Code § 105-1401. See e.g., *Sheppard v. Post,* 142 Ga. App. 646 (1) (236 SE2d 680) (1977). It follows that the trial court erred in disallowing the claims for attorney fees and punitive damages. See generally *Ponce De Leon Condominiums v. DiGirolamo,* 238 Ga. 188 (1, 2) (232 SE2d 62) (1977).

*Judgment reversed. Quillian, C. J., McMurray, P. J., and Shulman, P. J., concur. Carley and Pope, JJ., concur specially. Deen, P. J., Birdsong and Sognier, JJ., dissent.*

DECIDED JUNE 30, 1982 —
REHEARING DENIED JULY 27, 1982 —

*Matthew H. Patton, Kevin B. Buice,* for appellant.
*Hamilton Lokey, R. Daniel McGinnis, Ezra H. Cohen, Corneill A. Stephens,* for appellees.

CARLEY, Judge, concurring specially.

I am constrained to concur with the majority that the summary judgment in favor of appellee must be reversed because of my adherence to the philosophy that "it is indeed a great responsibility to say that 'in truth there is nothing to be tried' " *Holland v. Sanfax Corp.,* 106 Ga. App. 1 (126 SE2d 442) (1962). However because of the "fear" expressed by the dissent as to what the majority opinion is "impliedly based on," I want to make it clear that I do not agree that, "all that need be shown here is either actual or constructive knowledge that Bassett used the plaintiff's designs, and that the plaintiff was making a claim for royalties . . .". To the contrary, I think it clear that where, as here, liability is asserted on the basis of an "implied" assumption, "all the circumstances must be considered,

such as the subject matter of the contract, the third person's acts and words, whether he acquiesced in the terms of the contract, performed its obligations, or accepted its benefits." *Central of Ga. R. Co. v. Woolfolk Chem. Works,* 122 Ga. App. 789, 792 (178 SE2d 710) (1970). Therefore I believe that the case should be remanded to the trial court with direction that the trior of fact determine whether Bassett impliedly assumed the obligations of Barwick to Boss and that this determination be made on the basis of "all the circumstances" of the case as set forth in *Central of Ga. R. Co.,* supra.

POPE, Judge, concurring specially.

Boss contracted to design furniture for Barwick Industries, Inc. in exchange for its agreement to pay him royalties upon the sale of that furniture. The contract provided that the design documents and the manufacturing dies made from them were to be the property of Barwick but that Boss would have a right of first refusal in the event Barwick chose to sell them. Subsequently, Barwick transferred its furniture plant in Dublin, Georgia to Bassett Furniture Industries of North Carolina, Inc. The manufacturing dies and design documents of the furniture design created by Boss were included in the sale. Barwick allegedly did not offer Boss his contractual right of first refusal. Boss initiated suit against both Barwick and Bassett. By this suit Boss is attempting to protect his contractual right to royalties by seeking damages against Bassett, which has allegedly sold furniture manufactured from the design without paying any royalties. This appeal is from a grant of summary judgment in favor of Bassett. The case against Barwick remains pending below.

Boss's complaint alleges in pertinent part (1) that Bassett assumed Barwick's contractual obligation to pay royalties on furniture lines using Boss's designs, (2) that Bassett had acquired the dies, inventory, and design documents subject to an equitable interest in favor of Boss, (3) that Bassett had been unjustly enriched through its acquisition and use of the dies, inventory and design documents without making payments to Boss, (4) that Bassett had intentionally and maliciously interfered with Boss's contractual right of first refusal regarding the dies and design documents, and (5) that Bassett had conspired with Barwick to breach the contract and defraud Boss of his rights thereunder.

Boss contends that Bassett accepted the benefits of the royalty contract when it used the design documents and dies created by Boss to produce and sell furniture. Therefore, Boss urges that a promise to pay the royalties should be implied from the conduct of Bassett in this situation. The codification of this implied-in-fact contract

theory is in Code Ann. § 3-107 which provides: "Ordinarily, when one renders services or transfers property valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof. . . ." However, no contract will be implied if the facts and circumstances of the case indicate the person accepting the services or property had no knowledge of the benefits being conferred upon him. Compare *Lawson v. O'Kelly,* 81 Ga. App. 883(2) (60 SE2d 380) (1950).

In the present case Bassett submitted affidavits from its president, vice-president, internal auditor, and general counsel to support its contention that it had no actual knowledge of either the designs created by Boss or Barwick's duty to make royalty payments. Each of the four Bassett officers asserted that "At no time during the negotiations . . . was any mention ever made" of a contractual relationship between Boss and Barwick, that "at no time during the negotiations" was he "made aware" of Boss's claims, that he had no knowledge of the "written contract" during the negotiations, and that he did not learn that Boss "was claiming rights under his contract with Barwick" until three years after the sale took place. Three of the officers admitted that at the time of the negotiations they knew that the plaintiff had been employed to design furniture for Barwick, and at least one of them indicated in his deposition that it was not an unusual practice in the industry for furniture designers to be compensated on the basis of royalties. While these affidavits support the fact that these particular agents had no personal knowledge of the royalty contract, Bassett may not avail itself of the defense that it was a bona fide purchaser without any notice of Boss's claim in order to avoid a finding of a contract implied in fact.

In the business sales contract Bassett and Barwick expressly agreed not to comply with the requirements of the Uniform Commercial Code provision dealing with bulk transfers which was applicable to the sale in the present case, Code Ann. § 109A-6—101 et seq. Compliance with this statute would have provided Bassett with notice of creditors and all persons holding or asserting claims against Barwick. Code Ann. § 109A-6—104. "As stated in Kock, Georgia Commercial Practice, § 6-4, p. 149, 'the effect of this bulk sales legislation is to require the transferee [here Bassett] to help in creditor protection, *principally a matter of giving notice,* if he wants to ensure that they cannot reach the goods in his hands after he has paid for them. . . .' " (Emphasis supplied.) *McClain v. Laurens Glass Co.,* 127 Ga. App. 316, 317 (193 SE2d 194) (1972).

Bassett's action in affirmatively waiving compliance with the statute, thereby avoiding receiving notice of the royalty claims of

Boss, in my opinion, constituted a wilful or reckless avoidance of knowledge of what might have been uncovered by compliance with the bulk sales provisions of the Uniform Commercial Code. This avoidance is tantamount to actual knowledge; i.e., not a substitute for actual knowledge, but a recognition that a wilful or reckless avoidance of knowledge should be and is the equivalent of actual knowledge. In the present case proof of Bassett's wilful or reckless avoidance of notice of the royalty contract would, in my opinion, be sufficient to show the element of knowledge necessary to support Boss's restitutionary claims against Bassett, for compliance with those provisions of the Uniform Commercial Code would have disclosed Boss's claim for royalties.

Accordingly, I concur with the majority that summary judgment in favor of Bassett must be reversed.

DEEN, Presiding Judge, dissenting.

1. As I understand the majority opinion as rewritten after the answer of the Supreme Court to our certified question, it is still impliedly based on the assumption that all that need be shown here is either actual *or* constructive knowledge that Bassett used the plaintiff's designs, and that the plaintiff was making a claim for royalties, apparently on the premise that if these two facts existed it would be up to Bassett to find out whether there would be any legal basis for a claim for royalties following a sale even though the contract between Barwick Industries, Inc. as seller and Bassett Furniture Industries of North Carolina, Inc. as purchaser is absolutely without the slightest ambiguity that Barwick, as this court stated in its certified question to the Supreme Court, agreed "to indemnify Bassett for the payment of any claims, demands or liabilities not listed in the contract." In the absence of ground for inference that Barwick and Bassett actually conspired to use this language as a means of defrauding the plaintiff, I do not find a jury issue on the subject. There is no ground for such inference in the affidavits discussed in the majority opinion. Those establish without contradiction that Boss' relation with Barwick never came up during the negotiations, they were not made aware of the claims and had no knowledge of the contract until three years later. Even exercising every legitimate inference against the grant of a summary judgment, I do not see how this testimony can be construed to admit of a jury question as to the purchaser's knowledge of and assumption of a prior contract between the seller and the plaintiff. Our summary judgment law is not carried to such extremes. When the motion is made, the adverse party may not rest on his pleadings but his response "must set forth specific facts showing that there is a genuine issue for trial. If

he does not so respond, summary judgment, if appropriate, shall be entered against him." Code § 81A-156 (e). As was stated in *Crutcher v. Crawford Land Co.,* 220 Ga. 298, 303 (138 SE2d 580) (1964): "We believe the Act was clearly intended to dispose of litigation expeditiously and avoid useless time and expense to go through a jury trial even though the petition fairly bristles with serious allegations, if when given notice and an opportunity to produce affidavits by persons competent to testify on their own knowledge to the truth of such allegations the pleader does nothing to contradict the affidavits of the movant which show there is no right of the opposite party to prevail." To the same effect see *Summer-Minter & Assoc. v. Giordano,* 231 Ga. 601 (203 SE2d 173) (1974), and as quoted in *Bible Farm Service v. House Hasson Hardware Co.,* 157 Ga. App. 358 (277 SE2d 341) (1981): "It is thus seen that it is the duty of each party at the [summary judgment] hearing to present his case in full."

2. As regards the second division, where there has been a lawful and absolute sale of a company's assets (not amounting to a merger of two companies) in which the purchasing company assumes specified liabilities only and pays a sum certain for the assets, the purchasing company is *not responsible* for other debts or liabilities of the selling company not included in the sale contract. See *Carswell v. Nat. Exchange Bank,* 165 Ga. 351, 357 (140 SE 755) (1927) holding that where one corporation purchases assets of another the duties and obligations are as set up in the contract between them. " 'The mere purchase by one corporation of the property and franchise of another corporation is not a consolidation of the two corporations.' " Id. Under these circumstances an unlisted liability of the seller is not assumed by the purchaser. That the opposite result follows from a true merger, see *Mobley v. Hagedorn Const. Co.,* 168 Ga. 385 (147 SE 890) (1929). There is no question of merger in the present case, it follows that in the present case the unlisted liability of the seller is not chargeable to the purchaser where there is no actual knowledge on the part of the purchaser and where it appears from all the circumstances of the sale that the purchase without listing this liability was nevertheless bona fide on the part of the purchaser. As stated in *National Factor &c. Corp. v. State Bank of Cochran,* 224 Ga. 535, 539 (163 SE2d 817) (1968) quoting from Atlanta & St. A. B. R. Co. v. Barnes, 95 F2d 273: "Commercial transactions are not put within the strict fetters of constructive notice." The Barnes case, in analogous circumstances, emphasizes that to render the third party liable the circumstances must be such as to raise a presumption of knowledge of the facts comprising the tortious misconduct or must reasonably support the sole inference that such misconduct is intended by him.

I would affirm. I am authorized to state that Judge Birdsong and Judge Sognier concur in this dissent.