**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 25, 2014**

# In the Court of Appeals of Georgia

A13A1883. SIMS v. BAYSIDE CAPITAL, INC. et al

BOGGS, Judge.

Andrew J. Sims appeals from the trial court's grant of summary judgment in favor of Esquire Deposition Solutions, LLC, Bayside Capital, Inc., H.I.G. Capital, LLC, f/k/a Bayside Gallo Acquisition, LLC, and Jackson Craig (collectively "Esquire"), in this action stemming from the termination of his employment. For the following reasons, we affirm in part and reverse in part.

On appeal from the grant of summary judgment, "we apply a de novo standard of review." (Citations and punctuation omitted.) *Georgia Cash America v. Greene*, 318 Ga. App. 355, 358 (2) (734 SE2d 67) (2012). "[T]he moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment

as a matter of law." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991); see also OCGA § 9-11-56 (c).

So viewed, the record reveals that in 2006, Sims was hired as the CFO of Alexander Gallo Holdings, LLC ("AGH"), a court reporting company. Sims's employment was pursuant to a 2006 employment agreement with AGH, which was later superseded by a 2011 employment agreement.

Beginning in 2011, AGH began to suffer from financial difficulties, and on September 7, 2011 it filed a voluntary Chapter 11 bankruptcy petition. AGH requested permission of the court to sell its assets pursuant to 11 USC § 363, and negotiated an October 6, 2011 asset purchase agreement ("APA") naming AGH and others as the seller and Bayside Gallo Acquisition, LLC (subsequently renamed "Esquire"), as the buyer. The APA was amended on November 8, 2011, and on November 10, 2011, the bankruptcy court approved the APA and set a hearing to consider any objections to the assumption or assignment of any "Assumed Contracts." The APA was again amended for a final time on November 23, 2011, the day the asset purchase closed.

Pursuant to the APA, as amended, the assets in AGH's bankruptcy estate were divided into acquired assets and liabilities, which Esquire would purchase, and

2

excluded assets and liabilities, which it would not purchase. Sims's employment agreement with AGH was listed as an "excluded contract" on Schedule 1.1 (b) (ii) of the October 6 and November 8 versions of the APA.[1]

On November 14, 2011, nine days prior to the closing of the asset purchase, AGH published a press release announcing the bankruptcy court's approval of the APA. At the time of the final amendment to the APA on November 23, 2011, and the closing of the purchase on the same day, however, Sims's employment agreement with AGH was listed as a designated (or pending) contract, but was later deemed an excluded asset under the APA.[2]

Although Esquire did not acquire Sims's employment agreement at the closing of the APA, Sims nevertheless began employment with Esquire following the closing on an at-will basis. On November 28, 2011, five days following the closing of the asset purchase, Esquire informed Sims that his employment would be terminated.

---

[1]While Schedule 1.1 (b) (ii) is not attached to the November 8 amendment, the amendment does not purport to alter that schedule.

[2]The November 23 amendment amended certain schedules of the October 6 APA "as amended on November 8, 2011," but those schedules are not attached to the November 23 amendment and the parties have not provided a record cite to the attachments in this voluminous record. The parties do not assert, however, that any of the schedules were amended such that it would affect the claims presented on appeal.

3

Sims subsequently filed a verified complaint against Esquire, its affiliates, and Jackson Craig, its managing director, alleging breach of an oral contract, breach of a written contract, "promissory estoppel and detrimental reliance," fraudulent inducement, and unjust enrichment. He also sought attorney fees and costs.

The parties filed cross-motions for summary judgment, and following a hearing, the trial court granted Esquire's motion, and denied Sims's motion. It is from this order that Sims appeals.

1. Sims argues that the trial court erred in granting summary judgment to Esquire on his claim for breach of an oral agreement that he claims was reached between he and Craig, Esquire's managing director, on the day he was terminated. Esquires argues that while the parties discussed severance pay and litigation expenses, no agreement was ultimately reached, and that any alleged agreement based upon terms discussed on November 28 would fail for lack of consideration. But construing the evidence most favorably to Sims, during the meeting on November 28 where Sims was informed he would be terminated, Craig agreed to pay Sims six months of his salary as severance or what "equated to six months of salary," health insurance coverage through the end of 2011, and a payment of $175,000 as reimbursement for legal fees and expenses Sims and Alexander Gallo (CEO of AGH)

4

incurred during the bankruptcy. In return, Sims agreed to remain available though the end of December 2011.

> A contract is an agreement between two or more parties for the doing or not doing of some specific thing. In order that there may be an agreement, the parties must have a distinct intention common to both and without doubt or difference. Until all understand alike, there can be no assent, and, therefore, no contract. Both parties must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode is agreed on by which it may be settled, there is no agreement.

(Citations, punctuation and footnote omitted.) *BDI Laguna Holdings v. Marsh*, 301 Ga. App. 656, 663-664 (3) (689 SE2d 39) (2009).

It is undisputed that Sims was an at-will employee of Esquire who was later terminated. In the absence of an agreement requiring Esquire to pay Sims severance or provide him with health benefits or reimbursement for legal fees, Esquire was under no obligation to do so. The offer to make these concessions would therefore be "a mere gratuity." (Citation and punctuation omitted.) *Mgmt. Search v. Morgan*, 136 Ga. App. 651, 653 (1) (222 SE2d 154) (1975) (bonus not based upon any new consideration was mere gratuity); see also *Gale v. Hayes Microcomputer Products*, 192 Ga. App. 30, 30-31 (1) (383 SE2d 590) (1989) (at-will employee not entitled to

further payments after termination). Sims agreed, however, to "be available" and assist with the transition of the "finance function" for an additional month as consideration for the oral agreement. Even if that consideration is wholly inadequate, in the absence of "'great disparity of mental ability in contracting a bargain,'" a contract cannot be set aside for inadequate consideration. *Kimbrell v. Connor*, 218 Ga. App. 812, 813-814 (463 SE2d 376) (1995); see OCGA § 23-2-2. Indeed, OCGA § 13-3-46 provides that "[m]ere inadequacy of consideration alone will not void a contract."

"[W]here there is a conflict in the evidence as to the existence of an oral contract or as to its terms, the matter must be submitted to a jury for resolution." (Citations and punctuation omitted.) *Rome v. Polyidus Partners*, 322 Ga. App. 175, 178 (2) (744 SE2d 363) (2013). Because Sims has presented evidence creating a genuine issue of material fact regarding whether the parties reached an oral agreement, the trial court erred in granting Esquire's motion for summary judgment with regard to that agreement.[3]

[3]Esquire argues that the parties failed to agree on the exact dollar amount of the six months of salary. But construing the evidence as we must in favor of Sims, the parties agreed that Esquire would pay Sims six months of his salary as severance, health insurance though the end of the year, and $175,000 to Sims and Gallo for reimbursement. So in addition to an issue of fact regarding whether the parties

6

2. Sims next complains that Esquire committed fraud by leading him to believe that he would receive a written officer of employment for a definite term following the closing of the APA, while Esquire knew before the closing that it intended to terminate his employment.

"The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." (Citation and punctuation omitted.) *Stiefel v. Schick*, 260 Ga. 638, 639 (1) (398 SE2d 194) (1990). "To survive a motion for summary judgment in an action for fraud (including fraudulent inducement), a plaintiff must come forward with some evidence from which a jury could find each of the [foregoing] elements." (Citations, punctuation and footnote omitted.) *JarAllah v. Schoen*, 243 Ga. App. 402, 403-404 (1) (531 SE2d 778) (2000). "And significantly, when the representation consists of general commendations or mere expressions of

---

reached an oral agreement, there also remains an issue of fact regarding the exact amount of six months of Sims's salary. Esquire argues further that the parties failed to agree as to whether the severance would be styled as a loan reimbursement for tax purposes, and failed to agree on how to allocate the litigation expenses between Sims and Gallo. But "the parties need only agree to the essential terms of the contract . . .it is unnecessary that a contract state definitively and specifically all facts in detail to which the parties may be agreeing." (Citations and punctuation omitted.) See *Rushin v. Ussery*, 298 Ga. App. 830, 834 (2) (681 SE2d 263) (2009).

7

opinion, hope, expectation and the like, the party to whom it is made is not justified in relying upon it, and thus, it cannot serve as the basis for either a fraud or a negligent misrepresentation claim." (Citations, punctuation and footnotes omitted.) *Bithoney v. Fulton-DeKalb Hosp. Auth.*, 313 Ga. App. 335, 343 (2) (721 SE2d 577) (2011).

Sims points to statements in Esquire's press release, published nine days before the closing, that the "[e]ntire management team" (of which he was a part) was "excited to continue leading the Company;" an emailed letter on the same day to Esquire employees stating that "[o]ur entire management team . . . [is] committed to continuing to build the business;" and a notation at the bottom of Schedule 1.1 (b) (ii) (Excluded Contracts) referring to Sims and several other employees and stating: "Buyer intends to make offers of employment to such persons pursuant to and in accordance with . . . the Purchase Agreement." Sims contends that it was reasonable to infer from these representations that he would receive a written offer of employment from Esquire following the closing. He argues that because Craig deposed that he had decided prior to the November 14 press release that he was going to replace Sims as CFO, the press release, email and the notation in the APA were false representations.

First, Sims has failed to show that the statements in the press release and email were false representations. He has provided no evidence showing that management, including himself, did not in fact look forward to continuing to lead the company. See *Marshall v. King & Morgenstern*, 272 Ga. App. 515, 521 (5) (613 SE2d 7) (2005) (no evidence of false representation where letter stated only that party was trying to resolve dispute). And, in any case, while Sims argues that in reliance on these statements, he became an at-will employee of Esquire, he makes no argument and has presented no evidence of damages as a result of him doing so. To recover in tort for fraud, Sims must show that he sustained a loss or damage as the result of the alleged misrepresentations, "and in so doing, show not only that had [he] known the truth [he] would not have acted [and accepted the at-will employment] but also that [he] suffered actual economic loss." (Citations and punctuation omitted.) *CSS Real Estate Dev. v. State Bank and Trust Co.*, 324 Ga. App. 184, 186 (749 SE2d 773) (2013). Sims simply has failed to show that he suffered actual damages as a result of any alleged fraud on the part of Esquire. See id. And "[t]o establish a cause of action for fraud, a plaintiff must show that actual damages, not simply nominal damages, flowed from the fraud alleged." (Citation and punctuation omitted.) *Nash v. Studdard*, 294 Ga. App. 845, 848 (1) (670 SE2d 508) (2008). Sims's fraud claim accordingly fails

9

because he cannot establish some of the essential elements required for a prima facie case of fraud. The trial court therefore did not err in granting summary judgment to Esquire on that claim.

3. Sims argues that the trial court erred in granting summary judgment on his claim for breach of his written employment agreement. While his AGH employment agreement was not expressly assumed by Esquire, Sims argues that Esquire "unilaterally" and extrajudicially assumed the agreement by seeking to enforce its post-termination provisions.

The record reveals that on January 12, 2012, Esquire sent Sims a letter seeking to enforce various restrictive covenants in Sims's 2006 employment agreement. Sims responded with a January 17, 2012 letter informing Esquire that his 2006 employment agreement with AGH had been superseded by a 2011 employment agreement, that he intended nevertheless to honor the post-termination obligations under the 2011 agreement,[4] and that Esquire's attempt to enforce the post-employment provisions operated as an "assumption" by Esquire of certain obligations of that agreement that survived his termination by Esquire. Sims contends that he complied with the post-

_____

[4]This 2011 employment agreement contained confidentiality, non-disclosure, and non-solicitation provisions.

10

termination obligations of the 2011 agreement until February 22, 2012, when Esquire notified him via email that there was a "misconception as the status of Mr. Sims' [employment] agreement [with AGH]" at the time the letter was sent, that Esquire had not assumed that agreement, and that the agreement had been excluded from the assets acquired by Esquire.

Sims's argument here is essentially that Esquire, by seeking to enforce an agreement it did not assume under the APA, nevertheless assumed the agreement by implication and is bound thereby.

> Where a contract or undertaking is personal, it binds only the original parties and those who may assume the obligation or ratify or adopt the contract . . . . A third person may, of course, assume the obligation expressly in writing, or he may do so by implication where his conduct manifests an intent to become bound. In the latter event all the circumstances must be considered, such as the subject matter of the contract, the third person's acts and words, whether he acquiesced in the terms of the contract, performed its obligations, or accepted the benefits. Although the burden of proving an express or implied assumption is on the claimant at trial, the defendant as movant on motion for summary judgment, has the burden of proving that an assumption did not occur.

(Citations and punctuation omitted.) *Boss v. Bassett Indus.*, 163 Ga. App. 246, 247-248 (2) (292 SE2d 885) (1982) (full concurrence as to the holding).

11

While Esquire did not *expressly* assume Sims's employment agreement with AGH in writing, it did seek in writing to enforce its provisions. And Esquire has not shown that it did not accept the benefit of Sims's claimed compliance with the agreement's post-termination provisions at Esquire's request. In fact, Esquire makes no argument asserting that it did not assume the employment agreement by implication, but argues only that it did not expressly do so. Under these circumstances, Esquire has not met its burden of proving that an assumption did not occur. Because there exists a question of fact as to whether Esquire, by its actions, assumed Sims's employment agreement with AGH by implication, the trial court erred in granting Esquire summary judgment on Sims's claim for breach of that agreement. See id. at 248 (2); see also *Central of Ga. R. Co. v. Woolfolk Chemical Works*, 122 Ga. App. 789, 794-796 (1) (178 SE2d 710) (1970) (defendant failed to disprove assumption by implication).

4. Finally, Sims argues that he was entitled to 160 hours of vacation pay upon his termination from Esquire. The record contains Sims's earning statements as an AGH employee from December 2010 to December 2011. One of these statements, for a pay period ending on July 31, 2011, showed that as of that date, Sims had accrued a vacation balance of 160 hours. Esquire argues that it only assumed liability for

12

accrued vacation after the filing of the bankruptcy petition, and that because the 160 hours of Sims's vacation was accrued before the filing of the petition, it is not obligated to pay Sims for those hours.

Because we have held in Division 3 that there is an issue of fact regarding whether Esquire assumed Sims's 2011 employment contract with AGH, consideration of whether he is entitled to payment for vacation accrued under that agreement is premature. We therefore do not address this enumeration.

*Judgment affirmed in part, reversed in part. Doyle, P. J., and McFadden, J., concur.*